**Addendum A**

*Description of the Nature of the Action*

This 42 U.S.C. § 1983 action challenges N.Y.C. Admin. Code § 10-131(a)(2) and N.Y. Penal L. § 400.00(14). Plaintiffs contend that the $340 fee required to issue or renew a 3-year "residence premises" handgun license in New York City violates the Second Amendment right to keep and bear arms and the Fourteenth Amendment right to equal protection of the law. N.Y.C. Admin. Code § 10-131(a)(2) impermissibly infringes the right to keep and bear arms because the recurring $340 fee is a condition of obtaining official permission to engage in a "core" part of an enumerated, affirmative civil right – to wit, to keep a handgun in one's home for the purpose of self-protection.

Separate and apart from this, the Equal Protection Clause invalidates N.Y. Penal L. § 400.00(14) to the extent that it exempts citizens of New York City from the license-fee limitations that protect other citizens of New York State who seek handgun licenses. Specifically, § 400.00(14) authorizes all New York State localities to set and impose fees for handgun licenses, but it limits the amount of those fees by mandating a permissible range of from $3 to $10. However, § 400.00(14) exempts residents of New York City (and Nassau County) from this protection. This disparate treatment violates Plaintiffs' right to equal protection of the law.

Plaintiffs seek declaratory and injunctive relief against Mayor Michael Bloomberg, in his official capacity, and the City of New York. The Office of the New York Attorney General intervened in the action below.

*The Result Below*

The District Court denied Plaintiffs' motion for summary judgment and granted the cross-motions for summary judgment of Defendants-Appellees and Intervenor on March 26, 2012. The District Court concluded that the City's $340 fee was permissible because it was less than the City's claimed cost of administering its handgun regulations. Op. pp. 19-23. The District Court concluded that the rational-basis standard applied to § 400.00(14)'s exemption of New York City residents from the protection against fees greater than $10, and the District Court upheld this classification as serving the interest of "[p]ermitting New York City to recover the costs incurred by the licensing scheme." Op. p. 35.

*The Notice of Appeal, Lower Court Docket Sheet, and Lower Court Opinion are Attached*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHUI W. KWONG; *et al.*, <br><br> Plaintiffs, <br><br> -against- <br><br> MICHAEL BLOOMBERG, *et al.*, <br><br> Defendants. | No. 11 Civ. 2356 (JGK) (DCF) <br><br> ECF Case <br><br><br> **NOTICE OF APPEAL** |

Notice is hereby given that Plaintiffs SHUI W. KWONG, GEORGE GRECO, GLENN HERMAN, NICK LIDAKIS, TIMOTHY S. FUREY, DANIELA GRECO, NUNZIO CALCE, SECOND AMENDMENT FOUNDATION, INC., and THE NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC. hereby appeal to the United States Court of Appeals for the Second Circuit from the Opinion and Order (Doc. No. 45) denying Plaintiffs' motion for summary judgment and granting Defendants' and Intervenor's cross-motions for summary judgment, entered in this action on the 26th day of March, 2012.

Dated: New York, New York
April 18, 2012

**DAVID JENSEN PLLC**

By: _____
David D. Jensen, Esq.
111 John Street, Suite 230
New York, New York  10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com
*Attorney for Plaintiffs*

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:11-cv-02356-JGK

Kwong et al v. Bloomberg et al
Assigned to: Judge John G. Koeltl
Cause: 42:1983 Civil Rights Act

Date Filed: 04/05/2011
Date Terminated: 03/27/2012
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Shui W. Kwong**                     represented by **David Douglas Jensen**
David Jensen PLLC
111 John Street, Suite 230
New York, NY 10038
(212)-380-6615
Fax: (917)-591-1318
Email: david@djensenpllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**George Greco**                     represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Glenn Herman**                     represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nick Lidakis**                     represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Timothy S. Furey**                     represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniela Greco**

represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nunzio Calce**

represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation, Inc.**

represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The New York State Rifle & Pistol Association, Inc.**

represented by **David Douglas Jensen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Michael Bloomberg**
*in his Official Capacity as Mayor of the City of New York*

represented by **Michelle L. Goldberg-Cahn**
NYC Law Department, Office of the
Corporation Counsel (NYC)
100 Church Street
New York, NY 10007
(212) 788-0303
Fax: (212) 791-9714
Email: migoldbe@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**City of New York**

represented by **Michelle L. Goldberg-Cahn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eric Schneiderman**
*in his Official Capacity as Attorney General of the State Of New York*
*TERMINATED: 05/23/2011*

represented by **Monica Anne Connell**
New York State Office of the Attorney
General (24th Floor)
120 Broadway, 24th Floor
New York, NY 10271
212-416-8965
Fax: 212-416-6009

Email:
Monica.Connell@oag.state.ny.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**The Attorney General of the State of New York**          represented by   **Monica Anne Connell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/05/2011 | 1 | COMPLAINT against Michael Bloomberg, City of New York, Eric Schneiderman. (Filing Fee $ 350.00, Receipt Number 003290)Document filed by Daniela Greco, George Greco, Nick Lidakis, Timothy S. Furey, The New York State Rifle & Pistol Association, Inc., Second Amendment Foundation, Inc., Shui W. Kwong, Nunzio Calce, Glenn Herman.(ama) (Entered: 04/07/2011) |
| 04/05/2011 |  | SUMMONS ISSUED as to Michael Bloomberg, City of New York, Eric Schneiderman. (ama) (Entered: 04/07/2011) |
| 04/05/2011 |  | Magistrate Judge Debra C. Freeman is so designated. (ama) (Entered: 04/07/2011) |
| 04/05/2011 |  | Case Designated ECF. (ama) (Entered: 04/07/2011) |
| 04/05/2011 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Second Amendment Foundation, Inc.(ama) (Entered: 04/07/2011) |
| 04/05/2011 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by The New York State Rifle & Pistol Association, Inc.(ama) (Entered: 04/07/2011) |
| 04/20/2011 | 4 | NOTICE OF APPEARANCE by Michelle L. Goldberg-Cahn on behalf of Michael Bloomberg, City of New York (Goldberg-Cahn, Michelle) (Entered: 04/20/2011) |
| 04/26/2011 | 5 | ENDORSED LETTER addressed to Judge John G. Koeltl from Monica Connell dated 4/25/11 re: counsel for defendant New York State Attorney General Eric Schneiderman request an extension of time to respond to the Complaint. Co-defendants New York City and Mayor Michael Bloomberg, who will be separately represented by Michelle Goldberg-Calm, Senior Counsel in the New York City Law Department, also join in this request. We ask that all defendants be permitted to have until May 21, 2011 to respond to the complaint. ENDORSEMENT: APPLICATION GRANTED. Michael Bloomberg answer due 5/27/2011; City of New York answer due 5/27/2011; Eric Schneiderman answer due 5/27/2011. (Signed by Judge John G. Koeltl on 4/25/11) (pl) (Entered: 04/26/2011) |
|  |  |  |

| 04/26/2011 | 6 | NOTICE OF APPEARANCE by Monica Anne Connell on behalf of Eric Schneiderman (Connell, Monica) (Entered: 04/26/2011) |
|---|---|---|
| 05/23/2011 | 7 | ENDORSED LETTER addressed to Judge John G. Koeltl from Monica Connell dated 5/20/11 re: counsel for defendant New York State Attorney General Eric Schneiderman ask the Court for an adjournment of the pre-motion conference currently scheduled for May 31, 2011, if such conference is still necessary. ENDORSEMENT: The Conference is adjourned sine die. The parties should provide the Court with a proposed briefing stipulation. So Ordered. (Signed by Judge John G. Koeltl on 5/20/11) (pl) (Entered: 05/23/2011) |
| 05/23/2011 | 8 | STIPULATION AND ORDER OF DISMISSAL AND INTERVENTION, that, 1. Defendant Eric Schneidennan shall be and hereby is DISMISSED as a Defendant in this action pursuant to Rule 41(a) of the Federal Rules of Civil Procedure; and 2. The Attorney General of the State of New York shall and hereby does INTERVENE in this action to defend the constitutionality of Penal Law § 400.00(14) pursuant to 28 U.S.C. § 2403(b) and Rule 24{a)(1) of the Federal Rules of Civil Procedure. (Signed by Judge John G. Koeltl on 5/20/11) (pl) (Entered: 05/23/2011) |
| 05/25/2011 | 9 | NOTICE OF COURT CONFERENCE: Pretrial Conference set for 7/5/2011 at 04:30 PM in Courtroom 12B, 500 Pearl Street, New York, NY 10007 before Judge John G. Koeltl. All requests for adjournment must be made in writing to the Court. (ab) (Entered: 05/25/2011) |
| 05/25/2011 | 10 | SCHEDULING ORDER: No later than 6/22/2011, Plaintiffs will move for summary judgment, and Intervenor may move to dismiss. No later than 7/29/2011, Defendants and Intervenor will respond to Plaintiffs' motion for summary judgment, Defendants and/or Intervenor may cross-move for summary judgment, and Plaintiffs will respond to Intervenor's motion to dismiss. No later than 8/19/2011, Plaintiffs will file their reply in support of summary judgment and their opposition to any cross-motion for summary judgment, and Intervenor will file its reply in support of its motion to dismiss. No later than 9/13/2011, Defendants and/or Intervenor will file their reply in support of any cross-motion for summary judgment. (Motions due by 6/22/2011. Cross Motions due by 7/29/2011. Responses due by 8/19/2011. Replies due by 9/13/2011.) (Signed by Judge John G. Koeltl on 5/25/2011) (tro) (Entered: 05/26/2011) |
| 05/26/2011 | 11 | ANSWER to 1 Complaint,. Document filed by Michael Bloomberg, City of New York.(Goldberg-Cahn, Michelle) (Entered: 05/26/2011) |
| 06/22/2011 | 12 | ANSWER to 1 Complaint,. Document filed by The Attorney General of the State of New York.(Connell, Monica) (Entered: 06/22/2011) |
| 06/23/2011 | 13 | MOTION for Summary Judgment. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. Responses due by 7/29/2011(Jensen, David) (Entered: 06/23/2011) |
| 06/23/2011 | 14 | MEMORANDUM OF LAW in Support re: 13 MOTION for Summary |

| | | |
|---|---|---|
| | | Judgment.. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Jensen, David) (Entered: 06/23/2011) |
| 06/23/2011 | 15 | RULE 56.1 STATEMENT. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Attachments: # 1 Exhibit 01, # 2 Exhibit 02, # 3 Exhibit 03, # 4 Exhibit 04, # 5 Exhibit 05, # 6 Exhibit 06, # 7 Exhibit 07, # 8 Exhibit 08, # 9 Exhibit 09, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29)(Jensen, David) (Entered: 06/23/2011) |
| 07/05/2011 | | Minute Entry for proceedings held before Judge John G. Koeltl: Interim Pretrial Conference held on 7/5/2011. (rjm) (Entered: 08/17/2011) |
| 07/28/2011 | 16 | CROSS MOTION for Summary Judgment. Document filed by Michael Bloomberg, City of New York. Responses due by 8/19/2011(Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 17 | DECLARATION of Michelle Goldberg-Cahn in Opposition re: 16 CROSS MOTION for Summary Judgment., 13 MOTION for Summary Judgment.. Document filed by Michael Bloomberg, City of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C and D, # 4 Exhibit E through G) (Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 18 | DECLARATION of Michelle Goldberg-Cahn in Support re: 16 CROSS MOTION for Summary Judgment., 13 MOTION for Summary Judgment.. Document filed by Michael Bloomberg, City of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C and D, # 4 Exhibit E through G, # 5 Exhibit H through K, # 6 Exhibit L, # 7 Exhibit M through O, # 8 Exhibit P through Q, # 9 Exhibit R through T)(Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 19 | DECLARATION of Andrew Lunetta in Support re: 16 CROSS MOTION for Summary Judgment., 13 MOTION for Summary Judgment.. Document filed by Michael Bloomberg, City of New York. (Attachments: # 1 Exhibit A through I)(Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 20 | DECLARATION of Andy Shiwnarain in Support re: 16 CROSS MOTION for Summary Judgment., 13 MOTION for Summary Judgment.. Document filed by Michael Bloomberg, City of New York. (Attachments: # 1 Exhibit A) (Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 21 | RULE 56.1 STATEMENT. Document filed by Michael Bloomberg, City of New York. (Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 22 | MEMORANDUM OF LAW in Support re: 16 CROSS MOTION for Summary Judgment., 13 MOTION for Summary Judgment. *and in Opposition to* |

| | | |
|---|---|---|
| | | *Plaintiffs' Motion for Summary Judgment*. Document filed by Michael Bloomberg, City of New York. (Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 23 | COUNTER STATEMENT TO 15 Rule 56.1 Statement,,,. Document filed by Michael Bloomberg, City of New York. (Goldberg-Cahn, Michelle) (Entered: 07/28/2011) |
| 07/28/2011 | 24 | CROSS MOTION for Summary Judgment. Document filed by The Attorney General of the State of New York. Responses due by 8/19/2011(Connell, Monica) (Entered: 07/28/2011) |
| 07/28/2011 | 25 | DECLARATION of Monica A. Connell in Support re: 24 CROSS MOTION for Summary Judgment.. Document filed by The Attorney General of the State of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H(1), # 9 Exhibit H(2), # 10 Exhibit I, # 11 Exhibit J)(Connell, Monica) (Entered: 07/28/2011) |
| 07/28/2011 | 26 | DECLARATION of Sgt. James Sherman in Support re: 24 CROSS MOTION for Summary Judgment.. Document filed by The Attorney General of the State of New York. (Connell, Monica) (Entered: 07/28/2011) |
| 07/28/2011 | 27 | MEMORANDUM OF LAW in Support re: 24 CROSS MOTION for Summary Judgment. *and in Opposition to Plaintiffs' Motion for Summary Judgment*. Document filed by The Attorney General of the State of New York. (Connell, Monica) (Entered: 07/28/2011) |
| 07/28/2011 | 28 | RULE 56.1 STATEMENT., COUNTER STATEMENT TO 15 Rule 56.1 Statement,,,. Document filed by The Attorney General of the State of New York. (Connell, Monica) (Entered: 07/28/2011) |
| 08/22/2011 | 29 | ENDORSED LETTER addressed to Judge John G. Koeltl from David D. Jensen dated 8/18/2011 re: My office represents Plaintiffs in this action. The parties jointly request the following modification to the scheduling order (Doc. No. 10): Plaintiffs' reply and opposition briefing, presently due August 19, 2011, will be due on August 24, 2011; and Defendants' and Intervenor's reply briefs, presently due on September 13, 2011, will be due on October 4, 2011. ENDORSEMENT: Application granted. Plaintiffs' reply and opposition due August 24, 2011. Defendants' and Intervenor's reply briefs due October 4, 2011. ( Responses due by 8/24/2011, Replies due by 10/4/2011.) (Signed by Judge George B. Daniels on 8/22/2011) (lmb) (Entered: 08/22/2011) |
| 08/25/2011 | 30 | FILING ERROR - DEFICIENT DOCKET ENTRY - REPLY MEMORANDUM OF LAW in Support re: 13 MOTION for Summary Judgment. *and in Opposition to the Cross-Motions of Defendants and Intervenor*. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc. (Attachments: # 1 Affidavit Supplemental Declaration of David D. Jensen) (Jensen, David) Modified on 8/26/2011 (ldi). (Entered: 08/25/2011) |
| 08/25/2011 | 31 | COUNTER STATEMENT TO 28 Rule 56.1 Statement, Counter Statement to |

| | | |
|---|---|---|
| | | Rule 56.1. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Attachments: # 1 Affidavit Supplemental Declaration of Miko Tempski, # 2 Affidavit Supplemental Declaration of Thomas H. King)(Jensen, David) (Entered: 08/25/2011) |
| 08/25/2011 | 32 | RESPONSE re: 21 Rule 56.1 Statement. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Jensen, David) (Entered: 08/25/2011) |
| 08/25/2011 | 33 | RESPONSE re: 28 Rule 56.1 Statement, Counter Statement to Rule 56.1. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Jensen, David) (Entered: 08/25/2011) |
| 08/25/2011 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney David Douglas Jensen to RE-FILE Document 30 Reply Memorandum of Law in Support of Motion. ERROR(S): Supporting documents must be filed separately, each receiving their own document number. Declaration in Support of Motion is found under the event list Replies, Opposition and Supporting Documents. (ldi) (Entered: 08/26/2011) |
| 08/26/2011 | 34 | REPLY MEMORANDUM OF LAW in Support re: 13 MOTION for Summary Judgment. *and in Oppositon to Defendants' and Intervenor's Cross-Motions for Summary Judgment*. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Jensen, David) (Entered: 08/26/2011) |
| 08/26/2011 | 35 | DECLARATION of David D. Jensen in Opposition re: 16 CROSS MOTION for Summary Judgment.. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Jensen, David) (Entered: 08/26/2011) |
| 09/30/2011 | 36 | ENDORSED LETTER addressed to Judge John G. Koeltl from Monica Connell dated 9/30/11 re: Counsel for the NYS Attorney General writes to ask for permission to file a reply brief that is 18 pages long. ENDORSEMENT: So ordered. (Signed by Judge John G. Koeltl on 9/30/2011) (mro) (Entered: 09/30/2011) |
| 10/04/2011 | 37 | REPLY MEMORANDUM OF LAW in Support re: 16 CROSS MOTION for Summary Judgment.. Document filed by Michael Bloomberg, City of New York. (Goldberg-Cahn, Michelle) (Entered: 10/04/2011) |
| 10/04/2011 | 38 | RESPONSE re: 31 Counter Statement to Rule 56.1, *City Defendants' Responses to Plaintiffs' Counter 56/1 Statement*. Document filed by Michael Bloomberg, City of New York. (Goldberg-Cahn, Michelle) (Entered: 10/04/2011) |

| 10/04/2011 | 39 | REPLY MEMORANDUM OF LAW in Support re: 24 CROSS MOTION for Summary Judgment.. Document filed by The Attorney General of the State of New York. (Connell, Monica) (Entered: 10/04/2011) |
|---|---|---|
| 10/04/2011 | 40 | RULE 56.1 STATEMENT. Document filed by The Attorney General of the State of New York. (Connell, Monica) (Entered: 10/04/2011) |
| 10/05/2011 | 41 | ENDORSED LETTER addressed to Judge John G. Koeltl from Michelle Goldberg-Cahn dated 10/5/2011 re: counsel for Defendants write that in accordance with the briefing schedule ordered by this Court, the parties' motions and cross-motions for summary judgment were fully submitted yesterday. I write collectively with counsel for plaintiffs and counsel for State-Intervenor to request permission or each party to submit courtesy copies of their own papers on the motion and cross-motions. ENDORSEMENT: Application Granted. So Ordered. (Signed by Judge John G. Koeltl on 10/5/2011) (pl) Modified on 10/5/2011 (pl). (Entered: 10/05/2011) |
| 11/22/2011 | 42 | NOTICE of Supplemental Authority re: 13 MOTION for Summary Judgment.. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. (Jensen, David) (Entered: 11/22/2011) |
| 01/13/2012 | 43 | NOTICE OF ORAL ARGUMENT: You are directed to appear for oral argument on the pending motion(s), to be held on Tuesday, January 24, 2012 at 10:00am in Courtroom 12B, in front of the Honorable John G. Koeltl. All requests for adjournments must be made in writing to the Court. For any further information, please contact the Court at (212) 805-0107. (Oral Argument set for 1/24/2012 at 02:30 PM in Courtroom 12B, 500 Pearl Street, New York, NY 10007 before Judge John G. Koeltl). (jfe) (Entered: 01/13/2012) |
| 01/18/2012 | 44 | ENDORSED LETTER addressed to Judge John G. Koeltl from Monica Connell dated 1/13/12 re: Counsel writes to request an adjournment of the oral argument scheduled for 1/24/12. ENDORSEMENT: Adjourned to Friday, February 10, 2012 at 2:30 p.m. So ordered. ( Oral Argument set for 2/10/2012 at 02:30 PM before Judge John G. Koeltl.) (Signed by Judge John G. Koeltl on 1/18/2012) (mro) (Entered: 01/18/2012) |
| 02/10/2012 | | Minute Entry for proceedings held before Judge John G. Koeltl: Oral Argument held on 2/10/2012 re: 13 MOTION for Summary Judgment filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nick Lidakis, Nunzio Calce. (lmb) (Entered: 02/14/2012) |
| 03/26/2012 | 45 | OPINION AND ORDER: #101621 The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the plaintiffs' motion for summary judgment is denied. The cross motions for summary judgment by the City Defendants and the Intervenor are granted. The Clerk is directed to enter Judgment dismissing the |

| | | |
|---|---|---|
| | | Complaint. The Clerk is also directed to close all pending motions. (Signed by Judge John G. Koeltl on 3/26/2012) (ft) Modified on 3/28/2012 (jab). (Entered: 03/26/2012) |
| 03/26/2012 | | Transmission to Judgments and Orders Clerk. Transmitted re: 45 Memorandum & Opinion to the Judgments and Orders Clerk. (ft) (Entered: 03/26/2012) |
| 03/27/2012 | 46 | CLERK'S JUDGMENT That for the reasons stated in the Court's Opinion and Order dated March 26, 2012, Plaintiffs' motion for summary judgment is denied; the cross-motions for summary judgment by the City Defendants and the Intervenor are granted; accordingly, the Complaint is dismissed and all pending motions are closed. (Signed by Clerk of Court Ruby Krajick on 3/27/12) (Attachments: # 1 notice of right to appeal)(ml) (Entered: 03/27/2012) |
| 04/18/2012 | 47 | NOTICE OF CHANGE OF ADDRESS by David Douglas Jensen on behalf of All Plaintiffs. New Address: David Jensen PLLC, 111 John Street, Suite 230, New York, NY, USA 10038, (212) 380-6615. (Jensen, David) (Entered: 04/18/2012) |
| 04/18/2012 | 48 | NOTICE OF APPEAL from 45 Memorandum & Opinion,,. Document filed by Nunzio Calce, Timothy S. Furey, Daniela Greco, George Greco, Glenn Herman, Shui W. Kwong, Nick Lidakis, Second Amendment Foundation, Inc., The New York State Rifle & Pistol Association, Inc.. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Jensen, David) (Entered: 04/18/2012) |
| 04/18/2012 | | Appeal Fee Due: for 48 Notice of Appeal,. $455.00 Appeal fee due by 5/2/2012. (nd) (Entered: 04/18/2012) |
| 04/18/2012 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 48 Notice of Appeal,. (nd) (Entered: 04/18/2012) |
| 04/18/2012 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 24 CROSS MOTION for Summary Judgment. filed by The Attorney General of the State of New York, 7 Endorsed Letter, Terminate Deadlines and Hearings,, 45 Memorandum & Opinion,, 36 Endorsed Letter, 46 Clerk's Judgment, 5 Endorsed Letter, Set Deadlines,,,, 28 Rule 56.1 Statement, Counter Statement to Rule 56.1 filed by The Attorney General of the State of New York, 18 Declaration in Support of Motion, filed by Michael Bloomberg, City of New York, 16 CROSS MOTION for Summary Judgment. filed by Michael Bloomberg, City of New York, 43 Notice of Hearing, 26 Declaration in Support of Motion filed by The Attorney General of the State of New York, 23 Counter Statement to Rule 56.1 filed by Michael Bloomberg, City of New York, 19 Declaration in Support of Motion filed by Michael Bloomberg, City of New York, 8 Stipulation and Order of Dismissal,, 14 Memorandum of Law in Support of Motion, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nick Lidakis, Nunzio Calce, 3 Rule 7.1 Corporate Disclosure Statement filed by The New York State Rifle & Pistol Association, Inc., 21 Rule 56.1 Statement filed by City of New York, Michael Bloomberg, 17 Declaration in |

Opposition to Motion, filed by City of New York, Michael Bloomberg, 42 Notice (Other), Notice (Other) filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 12 Answer to Complaint filed by The Attorney General of the State of New York, 38 Response filed by City of New York, Michael Bloomberg, 13 MOTION for Summary Judgment. filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 47 Notice of Change of Address filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 11 Answer to Complaint filed by City of New York, Michael Bloomberg, 39 Reply Memorandum of Law in Support of Motion filed by The Attorney General of the State of New York, 27 Memorandum of Law in Support of Motion filed by The Attorney General of the State of New York, 35 Declaration in Opposition to Motion, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 37 Reply Memorandum of Law in Support of Motion filed by City of New York, Michael Bloomberg, 32 Response, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 41 Endorsed Letter,, 25 Declaration in Support of Motion, filed by The Attorney General of the State of New York, 6 Notice of Appearance filed by Eric Schneiderman, 9 Notice of Hearing, 33 Response, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 4 Notice of Appearance filed by City of New York, Michael Bloomberg, 20 Declaration in Support of Motion filed by City of New York, Michael Bloomberg, 1 Complaint, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 2 Rule 7.1 Corporate Disclosure Statement filed by Second Amendment Foundation, Inc., 44 Endorsed Letter, Set Hearings,, 34 Reply Memorandum of Law in Support of Motion, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 10 Scheduling Order,,, 31 Counter Statement to Rule 56.1, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 29 Endorsed Letter, Set Deadlines,,,, 22 Memorandum of Law in Support of Motion, filed by City of New York, Michael Bloomberg, 48 Notice of Appeal, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis, 40 Rule 56.1 Statement filed by The Attorney General of the State of New York, 15 Rule 56.1 Statement,,, filed by Second Amendment Foundation, Inc., Daniela

| | | |
|---|---|---|
| | | Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nunzio Calce, Nick Lidakis were transmitted to the U.S. Court of Appeals. (nd) (Entered: 04/18/2012) |
| 05/01/2012 | | USCA Appeal Fees received $ 455.00 receipt number 465401036927 on 05/01/2012 re: 48 Notice of Appeal, filed by Second Amendment Foundation, Inc., Daniela Greco, Shui W. Kwong, Timothy S. Furey, Glenn Herman, George Greco, The New York State Rifle & Pistol Association, Inc., Nick Lidakis, Nunzio Calce. (nd) (Entered: 05/01/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/02/2012 15:17:19 | | | |
| **PACER Login:** | dj2092 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:11-cv-02356-JGK |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

SHUI W. KWONG, ET AL.,

                    Plaintiffs,              11 Civ. 2356 (JGK)

          - against -                        OPINION AND ORDER

MICHAEL BLOOMBERG, ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

        This lawsuit challenges the constitutionality of New York
City's fee for a residential handgun license as well as the New
York State statute that authorizes the City to collect that fee.

        Plaintiffs Shui W. Kwong, George Greco, Glenn Herman, Nick
Lidakis, Timothy S. Furey, Daniela Greco, and Nunzio Calce ("the
individual plaintiffs"), as well as Second Amendment Foundation,
Inc. and the New York State Rifle & Pistol Association, Inc.
("the organizational plaintiffs") (collectively "the
plaintiffs"), bring this action against the City of New York and
Michael Bloomberg, in his official capacity as the Mayor of the
City of New York ("the City Defendants").  The Attorney General
of the State of New York ("the Intervenor") has intervened in
this action.[1]

————————————————————

[1] Initially, the plaintiffs also sued Eric Schneiderman, in his
official capacity as Attorney General of the State of New York.
He was subsequently dismissed from the litigation, and the

The plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging that two statutes — New York City Administrative Code § 10-131(a)(2) ("Admin. Code § 10-131(a)(2)" or "the City Statute") and New York Penal Law § 400.00(14) ("Penal Law § 400.00(14)" or "the State Statute") — violate their rights under the Second Amendment as incorporated against the States by the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, respectively.  Pursuant to the authority granted by Penal Law § 400.00(14), New York City has set the fee for a residential handgun license at $340.  The plaintiffs claim that the fee is unconstitutional.  The plaintiffs have now moved for summary judgment and the City Defendants and Intervenor cross-moved for summary judgment.  For the reasons explained below, the license fee and the implementing statutes are constitutional.

## I.

The following facts are undisputed unless otherwise noted.

The individual plaintiffs are residents of New York City who all have paid a $340 fee to apply for a New York City "Premises Residence" handgun license, which allows license holders to possess handguns within a specified dwelling.  (Pls.'

---

Attorney General then intervened in the action to defend the constitutionality of New York Penal Law § 400.00(14).

R. 56.1 Stmt. ¶¶ 9-15; City Defs.' R. 56.1 Resp. ¶¶ 9-15;
Intervenor's R. 56.1 Resp. ¶¶ 9-15); N.Y. Penal Law §
400.00(2)(a); 38 RCNY § 5-01.  Each individual plaintiff holds a
Premises Residence handgun license.  (Pls.' R. 56.1 Stmt. ¶¶ 9-
15; City Defs.' R. 56.1 Resp. ¶¶ 9-15; Intervenor's R. 56.1
Resp. ¶¶ 9-15.)  Plaintiffs Second Amendment Foundation, Inc.
("SAF") and the New York State Rifle & Pistol Association, Inc.
("NYSRPA") are not-for-profit member organizations that aim to
promote the exercise and preservation of Second Amendment
rights.  (Pls.' R. 56.1 Stmt. ¶¶ 17, 19, 22, 25; City Defs.' R.
56.1 Resp. ¶¶ 17, 19, 22, 25; Intervenor's R. 56.1 Resp. ¶¶ 17,
19, 22, 25.)  Plaintiffs Lidakis and Calce are members of SAF,
plaintiff Greco is a member of NYSRPA, and plaintiff Herman is a
member of both organizations.  (Pls.' R. 56.1 Stmt. ¶¶ 21, 26;
City Defs.' R. 56.1 Resp. ¶¶ 21, 26; Intervenor's R. 56.1 Resp.
¶¶ 21, 26.)  SAF and NYSRPA assert claims on their own behalf
and on behalf of their members.  (Compl. ¶¶ 49, 54.)

The plaintiffs bring this action pursuant to 42 U.S.C. §
1983 alleging a violation of their rights under the Second
Amendment and the Equal Protection Clause of the Fourteenth
Amendment.  The plaintiffs' challenge concerns the $340 fee that
New York City imposes for the issuance or renewal of a Premises
Residence handgun license that is valid for three years.  New
York State law makes it illegal to possess a handgun, including

within the home, without a license.  N.Y. Penal Law §§
265.01(1), 265.20(a)(3).  New York Penal Law Article 400
provides for several different types of licenses to carry or
possess handguns in various places or circumstances, including
the Premises Residence handgun license at issue here.  N.Y.
Penal Law § 400.00(2).  The Premises Residence handgun license
allows a license holder to "have and possess [a handgun] in his
dwelling . . . ."  N.Y. Penal Law § 400.00(2)(a).

In order to obtain or renew a Premises Residence handgun
license, an individual must apply for the license.  N.Y. Penal
Law § 400.00(1).  The License Division of the New York City
Police Department ("NYPD") is the entity responsible for
processing applications and issuing handgun licenses, including
Premises Residence handgun licenses.  (Decl. of Andrew Lunetta
("Lunetta Decl.") ¶¶ 2-3.)  Under New York law, "[n]o license
shall be issued or renewed . . . except by the licensing
officer, and then only after investigation and finding that all
statements in a proper application for a license are true."
N.Y. Penal Law § 400.00(1).  Accordingly, in processing
applications, a licensing officer must, among other duties,
determine whether the applicant meets the eligibility
requirements set forth under New York law; inspect mental
hygiene records; and investigate the truthfulness of statements
made in the application.  (Lunetta Decl. ¶¶ 11-15); N.Y. Penal

Law § 400.00(4).  The licensing officer may not approve the application if "good cause exists for the denial of the license."  N.Y. Penal Law § 400.00(1)(g).

The plaintiffs challenge two specific statutory provisions related to this licensing scheme.  The first provision the plaintiffs challenge — New York Penal Law § 400.00(14) — authorizes the New York City Council ("City Council") to set the fees for the issuance and renewal of all handgun licenses issued in New York City.  The statute also confers discretion on the Nassau County Board of Supervisors to set handgun licensing fees in Nassau County, although the plaintiffs do not challenge this portion of the statute.[2]  Penal Law § 400.00(14) provides that:

> In [New York City], the city council and in the county of Nassau the Board of Supervisors shall fix the fee to be charged for a license to carry or possess a pistol or revolver and provide for the disposition of such fees. Elsewhere in the state, the licensing officer shall collect and pay into the county treasury . . . not less than three dollars nor more than ten dollars as may be determined by the legislative body of the county . . . .

N.Y. Penal Law § 400.00(14).  Thus, while in New York State the license fee is generally capped at a $10 maximum, in New York City, the City Council may set the fee above this rate.  Penal

---

[2] Nassau County currently charges a fee of $200 to apply for a license that is valid for five years.  (Pls.' R. 56.1 Stmt. ¶ 48; City Defs.' R. 56.1 Resp. ¶ 48; Intervenor's R. 56.1 Resp. ¶ 48.)  The plaintiffs do not challenge the amount of this fee, nor the discretion conferred on Nassau County to set its own fees pursuant to Penal Law § 400.00(14).

Law § 400.00(14) was amended in 1947 by the New York State Legislature to confer this discretion on the City Council to set fees outside the fee range applicable to the rest of the State ("the 1947 Amendment").  1947 N.Y. Laws Ch. 147, attached as Decl. of Monica A. Connell ("Connell Decl.") Ex. F; Decl. of David D. Jensen ("Jensen Decl.") Ex. 18; Decl. of Michelle Goldberg-Cahn ("Goldberg-Cahn Decl.") Ex. A.

Since 1948, the City Council has enacted legislation establishing fees for the issuance and renewal of licenses to possess and carry handguns.  In 1948, the fee in New York City was set at $10 for the initial license and $5 for each renewal license.  Local Law No. 32 (1948), attached as Goldberg-Cahn Decl. Ex. B.  This fee was increased several times, with the most recent fee increase in 2004.  Local Law No. 47 (1962), Local Law No. 78 (1973), Local Law No. 42 (1979), Local Law No. 37 (1985), Local Law No. 51 (1989), Local Law No. 42 (1992), Local Law No. 37 (2004), attached as Goldberg-Cahn Decl. Exs. C, E, F, G, H, I, J.  Local Law 37 of 2004 raised the fees from the $170 fee then applicable for a two-year handgun license to the $340 fee for a three-year handgun license that the plaintiffs now challenge.[3]  Local Law 37 (2004), attached as Goldberg-Cahn

---

[3] Handgun license applicants must also pay an additional fee of $94.25 for fingerprinting and background checks conducted by the New York State Division of Criminal Justice Services.  (Pls.' R.

Decl. Ex. J.  The $340 fee is prescribed by Admin. Code § 10-131(a)(2), which provides:

> Every license to carry or possess a pistol or revolver in the city may be issued for a term of no less than one or more than three years.  Every applicant for a license to carry or possess a pistol or revolver in the city shall pay therefor, a fee of three hundred forty dollars for each original or renewal application for a three year license period or part thereof . . . .

N.Y.C. Admin. Code § 10-131(a)(2).

The plaintiffs contend that Admin. Code § 10-131(a)(2) violates the Second Amendment because it imposes an impermissible fee that unconstitutionally burdens the right to keep and bear arms.  The plaintiffs also argue that Penal Law § 400.00(14) violates the Equal Protection Clause because it draws a classification between New York City residents and other citizens of New York State that results in a disparate burden on the exercise of New York City residents' Second Amendment rights.  The plaintiffs do not challenge the requirement of a license to possess or carry a handgun, the performance of an investigation prior to the issuance of a license, or the imposition of a fee to apply for such a license.  In addition, the plaintiffs' action is confined to Premises Residence handgun licenses and does not challenge the application of the $340 fee

---

56.1 Stmt. ¶ 30; City Defs.' R. 56.1 Resp. ¶ 30; Intervenor's R. 56.1 Resp. ¶ 30.)  The plaintiffs do not challenge this fee.

to other types of handgun licenses.  The plaintiffs seek
declaratory and injunctive relief.  (Compl. ¶ 3.)

The plaintiffs moved for summary judgment in their favor
pursuant to Rule 56 of the Federal Rules of Civil Procedure
before any discovery in this action had taken place.  The City
Defendants and the Intervenor both cross-moved for summary
judgment.  The City Defendants' motion sought dismissal of all
causes of action in this suit, while the Intervenor's motion
sought dismissal of the second cause of action directed against
Penal Law § 400.00(14).

## II.

The standard for granting summary judgment is well
established.  "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are genuine issues
of material fact to be tried, not to deciding them.  Its duty,
in short, is confined at this point to issue-finding; it does
not extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The

moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Behringer v. Lavelle Sch. for Blind, No. 08 Civ. 4899, 2010 WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is inappropriate if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  The moving party has the initial burden of demonstrating the lack of a material issue of fact.  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on

9

conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Behringer, 2010 WL 5158644, at *1.


### III.

The Intervenor argues that neither the individual plaintiffs nor the organizational plaintiffs have standing to challenge Penal Law § 400.00(14). "Standing is a jurisdictional prerequisite; accordingly, the Court must initially determine whether [the plaintiff] has standing to invoke the jurisdiction of the federal courts to determine the merits of the underlying disputes." Local 851 of Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics, Inc., Nos. 95 Civ. 5179, 02 Civ. 6250, 2004 WL 2269703, at *5 (E.D.N.Y. Sept. 30, 2004) (internal quotation marks and citations omitted)), aff'd sub nom, Local 851 of Int'l Bhd. of Teamsters v. Quinlin, 164 F. App'x 174 (2d Cir. 2006) (summary order); see also Ontario Pub. Serv. Emps. Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27, 34 (2d Cir. 2004).

First, the Intervenor contends that there is no live case or controversy because the individual plaintiffs have not suffered any concrete or actual injury as a result of the

operation of Penal Law § 400.00(14).  In order for the
individual plaintiffs to establish standing on this motion for
summary judgment, they must set forth, by affidavit or other
evidence, specific facts demonstrating that:  (1) they have
suffered an actual or imminent injury in fact, that is concrete
and particularized, and not conjectural or hypothetical; (2)
this injury is fairly traceable to the defendants' alleged
actions; and (3) it is likely that a favorable decision in the
case will redress the injury.  Lujan v. Defenders of Wildlife,
504 U.S. 555, 559-61 (1992).

     The individual plaintiffs in this case have suffered a
concrete and actual injury because they have all paid the $340
application fee that is challenged as unconstitutional.  The
Intervenor's standing argument is thus better understood as an
argument that the plaintiffs have failed to satisfy the
causation element of standing, rather than the injury-in-fact
element.  Specifically, the Intervenor argues that the State
Statute is not the cause of the plaintiffs' injuries because it
is the City Statute, rather than the State Statute, that sets
the fee at the higher $340 rate about which the plaintiffs
complain.

     While the Intervenor is correct that it is the City
Statute, rather than the State Statute, that imposes the $340
fee at issue, there exists a sufficient causal nexus between the

11

City Council's actions and the State Statute to give rise to
standing to challenge the latter.  Without the exemption
provided by the State Statute, the City Council would not have
been able to set the handgun licensing fee at the current $340
rate; instead, it would have been confined to the $10 maximum
fee governing the rest of the State.  While it is true that
standing is improper where "the injury complained of is the
result of the independent action of some third party not before
the court," Bennett v. Spear, 520 U.S. 154, 169 (1997) (internal
quotation marks, citations and alterations omitted), a party
does "ha[ve] standing to challenge government action that
permits or authorizes third-party conduct that would otherwise
be illegal in the absence of the Government's action[,]"  Nat'l
Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 940
(D.C. Cir. 2004); see also Fulani v. League of Women Voters
Educ. Fund, 882 F.2d 621, 628 (2d Cir. 1989) (finding sufficient
causal nexus for standing where, "[b]ut for the government's
refusal to revoke the [defendant's] tax-exempt status, then, the
[defendant], as a practical matter, would have been unable to
sponsor the allegedly partisan debates which caused the injury
of which [the plaintiff] complains").  Here, in the absence of
the exemption provided by the State Statute, the City Council
could not permissibly have set the handgun licensing fee at the
$340 rate the plaintiffs paid.  In these circumstances, "the

intervening choices of [the City Council] are not truly independent of" the discretion conferred by the State Statute. Nat'l Wrestling, 366 F.3d at 941; see also Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426, 438-44 (D.C. Cir. 1998) (plaintiffs' injuries were fairly traceable to agency regulations because, absent those regulations, third party animal exhibitors would not have been permitted to take the actions complained of without violating the law).  Moreover, a favorable decision in this case would redress the plaintiffs' injuries because, if the State Statute no longer authorized the exemption, the City Council could no longer permissibly set the handgun licensing fee at the $340 rate about which the plaintiffs complain.  Therefore, the individual plaintiffs have standing to challenge the constitutionality of Penal Law § 400.00(14).

The Intervenor next argues that the organizational plaintiffs lack standing to sue.  An organizational plaintiff can assert standing either on its own behalf — when it has suffered injury in its own right — or on behalf of its members in a representative capacity, when certain requirements are met. Warth v. Seldin, 422 U.S. 490, 511 (1975); N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446, 457-58 (E.D.N.Y. 2002).  Here, the organizational plaintiffs seek to sue in both capacities. (Compl. ¶¶ 49, 54.)  However, because this is a § 1983 action,

the organizational plaintiffs may not sue in a representative capacity for the alleged violations of rights of their members. See, e.g., Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984); Aguayo v. Richardson, 473 F.2d 1090, 1099-1100 (2d Cir. 1973).  Moreover, while the organizational plaintiffs assert standing to sue on their own behalf, it is questionable whether the injury they claim to have suffered — namely, the expenditure of time and resources to challenge the licensing fee — constitutes a sufficient injury for standing purposes.  See Kachalsky v. Cacace, No. 10 Civ. 5413, 2011 WL 3962550, at *11 (S.D.N.Y. Sept. 2, 2011) (plaintiff Second Amendment Foundation, Inc.'s allegations that it engaged in education and research activities related to Second Amendment rights were insufficient at motion to dismiss stage to give rise to standing to sue on own behalf). However, because the individual plaintiffs have standing to sue and because, as set forth below, there is no constitutional violation in this case, it is unnecessary to resolve the question of whether the organizational plaintiffs have standing. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 263-64 (1977) (declining to determine whether standing was proper for organization in light of conclusion that at least

14

one individual plaintiff had standing).  Thus, it is appropriate
for the Court to reach the merits of the underlying dispute.[4]

## IV.

The plaintiffs argue that Admin. Code § 10-131(a)(2)
violates the Second Amendment because the fee it imposes is
excessive and impermissibly burdens the right to keep and bear
arms.

The Second Amendment provides:  "A well regulated Militia,
being necessary to the security of a free State, the right of
the people to keep and bear Arms, shall not be infringed."  U.S.
Const. amend. II.  In District of Columbia v. Heller, 554 U.S.
570 (2008), the Supreme Court concluded that the Second
Amendment "confer[s] an individual right to keep and bear arms."
Id. at 595.  While the Court declined to "undertake an
exhaustive historical analysis . . . of the full scope of the
Second Amendment," it made clear that "whatever else [the Second
Amendment] leaves to future evaluation, it surely elevates above
all other interests the right of law-abiding, responsible
citizens to use arms in defense of hearth and home."  Id. at

---

[4] The City Defendants also contend that the plaintiffs' challenge
is not a constitutional one because the plaintiffs can seek
redress in the New York State courts in a declaratory judgment
action.  However, "exhaustion is not a prerequisite to an action
under § 1983" and thus this argument is without merit.  Patsy v.
Bd. of Regents of Fla., 457 U.S. 496, 500-01 (1982).

626, 635; see also McDonald v. City of Chicago, 130 S. Ct. 3020, 3048 (2010).  The Second Amendment is "fully applicable to the States" through the Fourteenth Amendment as well as to the federal government.  McDonald, 130 S. Ct. at 3026.

A.

The plaintiffs first argue that the $340 fee is impermissible under the standards that govern the imposition of fees on the exercise of constitutionally protected activities — here, the Second Amendment right to keep and bear arms.

The Supreme Court's fee jurisprudence, which has addressed the imposition of fees on expressive activities protected by the First Amendment, makes clear that, while the Government may not tax the exercise of constitutionally protected activities, it may impose a fee designed to defray the administrative costs of regulating the protected activity.  In Cox v. New Hampshire, 312 U.S. 569 (1941), the Court found that a state statute requiring marchers to obtain licenses and prepay fees with a permissible range of from a "nominal amount" to $300 a day to parade on public streets was permissible because the fee was "not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed."  Id. at 577 (citation omitted).  The Court stated that "[t]here is nothing contrary to the

16

Constitution in the charge of a fee limited to the purpose stated." Id.  In contrast, in Murdock v. Pennsylvania, 319 U.S. 105 (1943), the Court invalidated a city ordinance that, as applied, required religious groups to pay a license fee of $1.50 a day before distributing literature.  The Court found the ordinance to be "a flat tax imposed on the exercise of a privilege granted by the Bill of Rights[,]" id. at 113, because the license fee was "not a nominal fee, imposed as a regulatory measure to defray the expense of policing the activities in question[,]" id. at 113-14.

Subsequent cases have thus analyzed the permissibility of fees imposed on the exercise of expressive activities by examining whether those fees were designed to defray, and did not exceed, the administrative costs of regulating the protected activity.[5]  See, e.g., Int'l Women's Day March Planning Comm. v. City of San Antonio, 619 F.3d 346, 369-71 (5th Cir. 2010); Sullivan v. City of Augusta, 511 F.3d 16, 37-38 (1st Cir. 2007); Nationalist Movement v. City of York, 481 F.3d 178, 183 (3d Cir. 2007); Mainstream Mktg. Servs., Inc. v. F.T.C., 358 F.3d 1228, 1247-48 (10th Cir. 2004); N.E. Ohio Coal. for Homeless v. City of Cleveland, 105 F.3d 1107, 1109-10 (6th Cir. 1997); Nat'l

_____

[5] The Supreme Court has also explained that the amount of the fee cannot vary based on the content of the speech in question. Forsyth Cnty., Ga. v. Nationalist Movement, 505 U.S. 123, 134-36 (1992).  This requirement is not at issue here.

Awareness Found. v. Abrams, 50 F.3d 1159, 1165-66 (2d Cir. 1995); Ctr. for Auto Safety, Inc. v. Athey, 37 F.3d 139, 144-46 (4th Cir. 1994); South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors, 935 F.2d 868, 897-98 (7th Cir. 1991).

This standard has also been applied by those few courts that have considered fees imposed on the exercise of Second Amendment rights.  See Justice v. Town of Cicero, No. 10 Civ. 5331, 2011 WL 5075870, at *7 (N.D. Ill. Oct. 25, 2011) ($25 application fee for registration of firearms was permissible because, "[l]ike the fee in [Cox], [the] registration fee . . . is 'not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed'" (quoting Cox, 312 U.S. at 577)); Heller v. District of Columbia ("Heller II"), 698 F. Supp. 2d 179, 192 (D.D.C. 2010) (upholding firearm registration requirements, including imposition of fees for registration, fingerprinting and ballistic identification totaling $60, concluding that fees were "intended to compensate the District for the costs of fingerprinting registrants, performing ballistic tests, processing applications and maintaining a database of firearms owners"), aff'd in part, rev'd in part on other grounds, No. 10-7036, 2011 WL 4551558 (D.C. Cir. Oct. 4, 2011); see also D.C. Mun. Regs. tit. 24, § 2320.

1.

The City Defendants contend that the $340 fee is permissible under this standard because it is designed to defray, and does not exceed, the costs of administering New York's handgun licensing scheme.  However, the plaintiffs argue that, to be permissible, a fee must not only be designed to defray administrative costs but must also be a "nominal" amount.  According to the plaintiffs, the $340 fee is too high to be nominal.

To support their argument that a fee must be "nominal" to be permissible, the plaintiffs point to a statement in <u>Murdock</u> indicating that the fee in question was impermissible because the fee was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question . . . ."  319 U.S. at 113-14.  The plaintiffs read this statement to mean that a fee must be both nominal and designed to defray administrative expenses to be permissible.  However, this argument was explicitly rejected by the Supreme Court in <u>Forsyth County, Georgia v. Nationalist Movement</u>, 505 U.S. 123 (1992), where the Court concluded that the courts below had erred in interpreting <u>Murdock</u> in this manner.  The Court explained that:

> [t]his sentence [from <u>Murdock</u>] does not mean that . . .
> only nominal charges are constitutionally permissible.  It
> reflects  merely  one  distinction  between  the  facts  in

> <u>Murdock</u> and those in <u>Cox</u>.  The tax at issue in <u>Murdock</u> was
> invalid because it was unrelated to any legitimate state
> interest, not because it was of a particular size.

<u>Id.</u> at 137.[6]  Courts of Appeals have also specifically rejected

the argument that a fee imposed on the exercise of

constitutionally protected activities must be "nominal" in

amount to be permissible.[7]  <u>See</u> <u>Am. Target Adver., Inc. v. Giani</u>,

199 F.3d 1241, 1248-49 (10th Cir. 2000) (rejecting plaintiffs'

reliance on <u>Murdock</u> for proposition that sheer size of $250 fee

rendered it constitutionally excessive); <u>N.E. Ohio Coal. for</u>

<u>Homeless</u>, 105 F.3d at 1110 ("[A] more than nominal permit fee is

constitutionally permissible so long as the fee is reasonably

related to the expenses incident to the administration of the

ordinance and to the maintenance of public safety and order."

---

[6]  Indeed, in <u>Cox</u> itself, the Supreme Court affirmed the
imposition of a parade license fee that ranged from what it
described as "nominal" up to $300.  <u>Cox</u>, 312 U.S. at 576.  Thus,
the Supreme Court did not restrict otherwise permissible license
fees to those that were "nominal" in amount.

[7] The plaintiffs contend that the decision of the Court of
Appeals for the Second Circuit in <u>Abrams</u> supports the
proposition that a fee must be "nominal" to be permissible.
While it is true that the district court in <u>Abrams</u> separately
analyzed the question of whether the fee was "nominal," 812 F.
Supp. 431, 433 (S.D.N.Y. 1993), the Court of Appeals did not
separately consider whether the fee was "nominal" and framed the
relevant test as whether the costs attendant to a regulatory
scheme exceed the fees imposed, 50 F.3d at 1164-66.  Moreover,
the fee considered to be "nominal" by the district court in
<u>Abrams</u> was an $80 annual registration fee.  812 F. Supp. at 432.
The $340 fee for a three-year handgun license at issue here,
when calculated at an annual rate, is about $113, which is
comparable to the $80 annual fee deemed "nominal" by the
district court in <u>Abrams</u>.

(internal quotation marks and citation omitted)); <u>Stonewall</u> <u>Union v. City of Columbus</u>, 931 F.2d 1130, 1136 (6th Cir. 1991) (rejecting plaintiffs' reliance on <u>Murdock</u> for proposition that only nominal permit fees are permissible); cf. <u>Coal. for</u> <u>Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1323 n.16 (11th Cir. 2000) ("While we do not specifically address [the issue], we note that the majority of our sister circuits have interpreted [<u>Forsyth County</u>] as making it constitutionally permissible for an ordinance regulating constitutionally protected activity to impose a permit fee which is more than nominal . . . .") (collecting cases).

While it is possible to conceive of fees that are impermissible because they are so exorbitant as to deter the exercise of the protected activity, see <u>729, Inc. v. Kenton</u> <u>Cnty. Fiscal Court</u>, 515 F.3d 485, 503 (6th Cir. 2008) (concluding that the Supreme Court's fee cases "created some limit on the amount the government could charge, based on the potential for a fee to deter protected speech"), there is no showing that the $340 handgun licensing fee qualifies as such a fee.  The plaintiffs merely assert that the $340 fee is excessive, which is not sufficient to raise a genuine issue of material fact regarding the permissibility of the fee.  See <u>729,</u> <u>Inc. v. Kenton Cnty. Fiscal Court</u>, 402 F. App'x 131, 133 (6th Cir. 2010) ("Merely asserting that the fee is exorbitant,

without evidentiary support, is insufficient to withstand the County's motion for summary judgment."). There is no evidence that the fee has deterred or is likely to deter any individual from exercising his or her Second Amendment rights; indeed, all of the plaintiffs have paid the fee and have not pointed to any particular hardship they faced in doing so. Courts that have considered the size of a fee in analyzing the fee's permissibility have approved fees significantly higher than the $340 fee at issue here. See id. ($3000 adult business licensing fee was not constitutionally excessive); Coal. for Abolition, 219 F.3d at 1323-24 (festival permit fees ranging from $950 to $6500 based on size of festival were permissible). Furthermore, while the plaintiffs emphasize that other jurisdictions charge significantly lower fees, this does not establish that the $340 fee is excessive. See 729, Inc., 402 F. App'x at 133 (rejecting plaintiffs' argument that amount of licensing fee was unreasonable because other jurisdictions charged lower fees).

The plaintiffs also argue that, because the fees at issue are imposed directly on the basic ability to possess handguns in the home for self defense, any fee must be "nominal" to be permissible. The plaintiffs contend that this situation is distinct from a fee imposed on gun use that is commercial in nature or involves the use of public resources. However, the fee cases do not hold that it is only permissible to impose a

22

fee when the constitutionally protected activity itself involves the use of public resources or the conferral of a public benefit, as with a parade permit.  Instead, these cases have held that fees may also be imposed to cover the costs of a regulatory scheme designed to combat potentially harmful effects of the constitutionally protected activity, such as the potential for fraud arising from charitable solicitations, and have not required that fees imposed in this context be only "nominal."  See Giani, 199 F.3d at 1248-49; Abrams, 50 F.3d at 1165-66; Athey, 37 F.3d at 144-46.

Thus, the plaintiffs' argument that the $340 fee imposed by Admin. Code § 10-131(a)(2) is impermissible because it is not "nominal" is without merit.

2.

The plaintiffs also argue that the $340 fee is impermissible because it is not designed to defray the administrative costs of New York's handgun licensing scheme.

The plaintiffs contend that the legislative history of Local Law 37 of 2004, which increased the handgun licensing fee to $340, suggests that the objective of the fee increase was not to defray administrative costs.  The plaintiffs emphasize that the Fiscal Impact Statement (FIS) for this law made no mention of the administrative costs attendant to handgun licensing. (Jensen Decl. Ex. 22.)  However, the absence of any reference to

23

administrative costs in the 2004 FIS is not meaningful, because the FIS only provided an estimate of the fiscal impact of the law, rather than purporting to describe the law's purpose.  See Jensen Decl. Ex. 22 (detailing impact on revenues and expenditures but providing no description of arguments in favor of or in opposition to the law).  That Local Law 37 had the objective of recovering costs attendant to the licensing scheme is reflected in other documents prepared in connection with the legislation.  For example, the Report of the Committee of Finance of the New York City Council noted that the revenue collected through licensing application fees was substantially lower than the costs incurred through licensing.  (Goldberg-Cahn Ex. K at 2.)  In addition, the User Cost Analysis prepared by the New York City Office of Budget Management ("OMB") in 2003 noted that the cost per licensing application was $343.49 while the fee per application was lower and recommended to increase the license fee "to $340 for a three-year license, to recover costs."  (Lunetta Decl. Ex. D at 3.)  Thus, the plaintiffs' contention that the 2004 fee increase did not have the objective of defraying administrative costs is unpersuasive.

Moreover, there is no genuine dispute that the $340 fee is less than the administrative costs of the licensing scheme.  The User Cost Analysis performed by the OMB in 2003 indicates that the average cost to the City at that time for each handgun

24

license application was $343.49, more than the $340 fee at
issue.  (Lunetta Decl. Ex. D at 3.)  In addition, a User Cost
Analysis performed by the OMB in 2010 indicates that the cost to
the City for each Premises Residence handgun license application
was $977.16 for each initial application and $346.92 for each
renewal application.  (Lunetta Decl. Ex. F at 3; Ex. G at 3.)
Thus, as of 2010, the fee for each Premises Residence handgun
license application — the only type of license at issue here —
represented only 34.79% of the per-unit costs incurred by the
City.  (Lunetta Decl. ¶ 19.)

The plaintiffs offer no evidence disputing or rebutting the
City Defendants' evidence that the application fees imposed by
Admin. Code § 10-131(a)(2) do not exceed the administrative
costs attendant to the licensing scheme.[8]  Instead, even though
the plaintiffs initially sought summary judgment, the plaintiffs
now argue that, if the Court concludes that the permissibility

_____

[8] The plaintiffs initially argued that the fees recouped from
handgun licensing were deposited in their entirety into the NYPD
Pension Fund rather than used to defray administrative costs.
However, the statutory provision upon which the plaintiffs
relied in support of this argument — New York City Admin. Code §
13-203(6) — was amended in 1995 to provide that all fees
collected from handgun licensing be paid into the City of New
York's General Fund rather than the NYPD's Pension Fund.
1995 N.Y. Laws Ch. 503, attached as Goldberg-Cahn Decl. Ex. L;
N.Y.C. Admin. Code § 13-213.1(3)(c).  The plaintiffs do not
dispute that this amendment had the effect of directing handgun
licensing fees to the City's General Fund, rather than to the
NYPD Pension Fund.  (City Defs.' R. 56.1 Counterstmt. ¶¶ 55-59;
Pls.' R. 56.1 Resp. ¶¶ 55-59.).

of the fee turns on this question, the Court should deny the
motions for summary judgment and allow discovery.  However, in
order for a party to resist summary judgment on the grounds that
additional discovery is necessary, that party "must submit an
affidavit showing (1) what facts are sought to resist the motion
and how they are to be obtained, (2) how those facts are
reasonably expected to create a genuine issue of material fact,
(3) what effort affiant has made to obtain them, and (4) why the
affiant was unsuccessful in those efforts." Miller v. Wolpoff &
Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003) (internal
quotation marks, citation and alterations omitted); see also
Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97,
107 (2d Cir. 1981).  When a party has made such a showing, a
district court may then: "(1) defer considering the motion or
deny it; (2) allow time to obtain affidavits or declarations or
to take discovery; or (3) issue any other appropriate order."
Fed. R. Civ. P. 56(d).

While the plaintiffs have submitted an affidavit
purportedly in compliance with Rule 56(d), this affidavit does
not make a specific proffer regarding what discovery the
plaintiffs seek, why that discovery would be reasonably expected
to create a genuine issue of material fact, or what effort they
have made to obtain discovery.  The plaintiffs moved for summary
judgment without seeking any discovery.  The affidavit states

only that:  "Plaintiffs submit that discovery is not necessary
in light of the issues presented.  However, if the Court
concludes that the 'cost' basis for the City's $340 fee is a
dispositive factor, then discovery regarding the basis for the
City's calculations will be essential to oppose the City's
motion."  (Suppl. Decl. of David D. Jensen at ¶ 6.)  The
plaintiffs have therefore failed to show that they are entitled
to discovery prior to summary judgment.  The City Defendants
have met their burden of demonstrating that the $340 fee defrays
administrative costs attendant to the licensing scheme.  Thus,
the $340 fee is a permissible fee imposed on the exercise of
constitutionally protected activities and does not violate the
Second Amendment.

**B.**

     The fee imposed by Admin. Code § 10-131(a)(2) is also
permissible if analyzed under the means-end scrutiny applicable
to laws that burden the exercise of Second Amendment rights.
     The majority of courts considering Second Amendment
challenges after <u>Heller</u> have adopted a two-pronged analysis,
whereby the court first "ask[s] whether the challenged law
imposes a burden on conduct falling within the scope of the
Second Amendment's guarantee."  If the challenged law does
impose such a burden, the court "evaluate[s] the law under some

27

form of means-end scrutiny.  If the law passes muster under that standard, it is constitutional.  If it fails, it is invalid."
United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010);
see also Heller v. District of Columbia ("Heller II"), No. 10-7036, 2011 WL 4551558, at *5-6 (D.C. Cir. Oct. 4, 2011); United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010);
Kachalsky, 2011 WL 3962550, at *20.

In this case, assuming, at the first step, that the $340 fee burdens conduct falling within the scope of the Second Amendment, the fee would pass muster under means-end scrutiny at the second step.  Neither Heller nor McDonald prescribed the standard of scrutiny applicable to Second Amendment challenges.[9]

---

[9] Heller noted that the handgun ban it confronted would be invalid under any level of scrutiny.  554 U.S. at 628-29.
Heller did, however, suggest that rational basis review was inappropriate, noting that "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."  Id. at 628 n.27; see also McDonald, 130 S. Ct. at 3047.  Many courts have also interpreted Heller as implicitly inconsistent with across-the-board application of strict scrutiny, relying upon Heller's reference to "presumptively lawful regulatory measures" such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ."  Heller, 554 U.S. at 626-27 & n.26.  See, e.g., id. at 688 (Breyer, J., dissenting) ("[T]he majority implicitly, and appropriately, rejects [strict scrutiny] by broadly approving a set of laws . . . whose constitutionality under a strict scrutiny standard would be far from clear."); Kachalsky, 2011 WL 3962550, at *25 n.29 (collecting cases).

Most courts have declined to apply strict scrutiny to laws
burdening the Second Amendment right.  Instead, courts have
concluded that, as in the First Amendment context, the level of
scrutiny to be applied should vary "depend[ing] on the nature of
the conduct being regulated and the degree to which the
challenged law burdens the right." Chester, 628 F.3d at 682;
see also Heller II, 2011 WL 4551558, at *9; United States v.
Masciandaro, 638 F.3d 458, 470 (4th Cir. 2011).  Applying this
standard, the vast majority of courts have applied intermediate
scrutiny to the Second Amendment challenges they have
confronted.  See, e.g., Masciandaro, 638 F.3d at 471; Chester,
628 F.3d at 683; Reese, 627 F.3d at 801-02; Marzzarella, 614
F.3d at 95-96; Kachalsky, 2011 WL 3962550, at *26; Osterweil v.
Bartlett, No. 09 Civ. 825, 2011 WL 1983340, at *8-10 (N.D.N.Y.
May 20, 2011); see also United States v. Laurent, No. 11 Cr.
322, 2011 WL 6004606, at *19 (E.D.N.Y. Dec. 2, 2011) (noting
majority trend of application of intermediate scrutiny).[10]
Likewise, in this case, because Admin. Code § 10-131(a)(2) does
not effect a ban on handguns but only imposes a fee, the burden

---

[10] In Nordyke v. King, 644 F.3d 776 (9th Cir. 2011), reh'g en
banc granted, 644 F.3d 774 (9th Cir. 2011), the Court of Appeals
for the Ninth Circuit applied a "substantial burden" test
whereby only laws that "substantially burden" Second Amendment
rights will receive any form of heightened judicial scrutiny,
id. at 785-86.

on the Second Amendment right is not severe and intermediate scrutiny is appropriate.

Courts applying intermediate scrutiny in the Second Amendment context have concluded that the asserted governmental objective must be substantial or important and that there must be a reasonable, but not perfect, fit between the challenged regulation and the asserted objective. See, e.g., Marzzarella, 614 F.3d at 98; Chester, 628 F.3d at 683; Reese, 627 F.3d at 802. The parties do not dispute that the governmental objectives promoted by New York's handgun licensing scheme are to promote public safety and prevent gun violence and that these objectives are important and substantial ones. See, e.g., Bach v. Pataki, 408 F.3d 75, 91 (2d Cir. 2005); Kachalsky, 2011 WL 3962550, at *27 (collecting cases); Osterweil, 2011 WL 1983340, at *10. The $340 application fee is substantially related to these important governmental interests because the fee is designed to recover the costs attendant to the licensing scheme. Cf. Athey, 37 F.3d at 145 (fee attendant to licensing program was narrowly tailored to further legitimate governmental purpose where fees were designed to defray costs of program aimed at preventing fraud in charitable solicitations); Abrams, 50 F.3d at 1167 (same). Thus, Admin. Code § 10-131(a)(2) also passes constitutional muster under an intermediate scrutiny analysis and does not violate the Second Amendment. Accordingly, the

City Defendants' motion for summary judgment dismissing the plaintiffs' first cause of action is **granted** and this claim is **dismissed**.  The plaintiffs' motion for summary judgment with respect to this claim is **denied**.

**V.**

The plaintiffs next assert that Penal Law § 400.00(14) violates the Equal Protection Clause because it imposes an unequal burden on the Second Amendment rights of New York City residents as compared with other citizens of New York State.[11]

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Supreme Court has made clear that:

> The guarantee of equal protection . . . is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity.  It is well settled that where a statutory classification does not itself impinge on a right or liberty protected by the Constitution, the validity of classification must be sustained unless 'the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective.'

---

[11] The plaintiffs made it clear at oral argument that they challenged only the State Statute, Penal Law § 400.00(14), under the Equal Protection Clause and not Admin. Code § 10-131(a)(2) that actually sets the amount of the license fee.  (Hr'g Tr., 13, Feb. 10, 2012.)

Harris v. McRae, 448 U.S. 297, 322 (1980) (quoting McGowan v. Maryland, 366 U.S. 420 (1961)).  However, this presumption of validity "disappears if a statutory classification is predicated on criteria that are, in a constitutional sense, 'suspect,'" such as a race-based classification.  Id.  Thus, "if a law neither burdens a fundamental right nor targets a suspect class," the legislative classification will be upheld "so long as it bears a rational relation to some legitimate end."  Romer v. Evans, 517 U.S. 620, 631 (1996).

Rational basis review is the appropriate standard of scrutiny to apply to Penal Law § 400.00(14) because the law involves no suspect classification[12] and imposes no burden on the Second Amendment right to keep and bear arms.  The plaintiffs contend that Penal Law § 400.00(14) does disparately burden the Second Amendment right because, by exempting New York City residents from the $10 maximum fee that applies elsewhere in New York State, the law effectively imposes a higher fee on New York City residents.  However, this characterization of the law is incorrect.  Penal Law § 400.00(14) does not impose or endorse a higher licensing fee for New York City residents:  it merely provides that, in New York City, the City Council may set the

---

[12] The classification at issue distinguishes between New York City residents and other citizens of New York State.  This does not constitute a suspect classification.  See City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440-41 (1985).

licensing fee at the level it sees fit.  The City Council could choose to set the fee lower than the $3-$10 range applicable to the rest of the State; nothing about Penal Law § 400.00(14) encourages the imposition of a higher fee.  While it is true, as the plaintiffs argue, that Penal Law § 400.00(14) distinguishes between New York City residents and other New York State citizens by establishing a $10 maximum fee applicable only to the latter group, this indicates only that the law draws a classification, not that this classification burdens a constitutional right.  Thus, it is not Penal Law § 400.00(14) but rather Admin. Code § 10-131(a)(2) that imposes the fee claimed to burden the plaintiffs' Second Amendment rights.

Moreover, the discretion Penal Law § 400.00(14) confers upon the City to set its own licensing fees is cabined by New York law, which requires that the amount of a license or permit fee not exceed "a sum reasonably necessary to cover the costs of issuance, inspection and enforcement" and not be "exacted for revenue purposes or to offset the cost of general governmental functions . . . ."  ATM One L.L.C. v. Vill. of Freeport, 714 N.Y.S.2d 721, 722 (App. Div. 2000) (citation omitted).  Thus, while Penal Law § 400.00(14) permits the City to set its own licensing fees, New York law ensures that these fees will be designed to defray the administrative costs of licensing and will therefore be permissible under the standards articulated in

the Supreme Court's fee jurisprudence.  By permitting the City

to set a constitutionally permissible fee, the State Statute

cannot be said to burden the plaintiffs' Second Amendment rights

and therefore should not be subjected to heightened scrutiny.[13]

See Nationalist Movement, 481 F.3d at 183 n.4 (concluding that

rational basis review was appropriate for equal protection

challenge to permit fee charging residents $50 and non-residents

---

[13] Even if Penal Law § 400.00(14) could be viewed as disparately
burdening the Second Amendment right by imposing a higher fee on
New York City residents, the law would still pass constitutional
muster.  Several courts have declined to apply strict scrutiny
when considering equal protection challenges to laws that
disparately burden Second Amendment rights.  While noting that
strict scrutiny is generally applicable to equal protection
challenges to laws that disparately burden fundamental rights,
these courts have concluded that the Second Amendment analysis
is sufficient to protect these rights and have either declined
to conduct a separate equal protection analysis or have
subjected the equal protection challenge to rational basis
review.  See Nordyke, 644 F.3d at 794 (applying rational basis
review to equal protection claim implicating Second Amendment
rights, concluding that "although the right to keep and bear
arms for self-defense is a fundamental right, that right is more
appropriately analyzed under the Second Amendment"); Woollard v.
Sheridan, No. L-10-2068, 2012 WL 695674, at *12 (D. Md. Mar. 2,
2012) (declining to apply strict scrutiny to equal protection
challenge that was "essentially a restatement" of Second
Amendment claim, concluding that the analysis under the Second
Amendment was sufficient to resolve the issue); cf. Hightower v.
City of Boston, No. 08-11955, 2011 WL 4543084, at *20 (D. Mass.
Sept. 29, 2011) (noting that, if the plaintiff's Second
Amendment challenge were ripe, the court would dispose of the
plaintiff's related equal protection claim by compressing it
with the Second Amendment claim).  In this case, considered
under rational basis review or under the Second Amendment
analysis already articulated, any burden imposed by the $340 fee
is permissible and thus does not violate the Equal Protection
Clause.

$100, in light of finding that fee was permissible imposition on First Amendment right under Supreme Court's fee jurisprudence).

Penal Law § 400.00(14) plainly passes constitutional muster under rational basis review.  A classification will survive rational basis scrutiny "if there is a rational relationship between the disparity of treatment and some legitimate government purpose."  Heller v. Doe, 509 U.S. 312, 320 (1993).  A classification must be upheld under rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. (citation omitted).  The party challenging the statute bears the burden of showing that there is no reasonable basis for the classification and must "negative every conceivable basis which might support it" in order to prevail.  Id. (citation omitted); see also U.S.A. Baseball v. City of New York, 509 F. Supp. 2d 285, 293 (S.D.N.Y. 2007).  In addition, a classification need not form a perfect fit between means and ends to survive rational basis review.  Heller, 509 U.S. at 321.

Permitting New York City to recover the costs incurred by the licensing scheme constitutes a rational basis for the classification drawn by Penal Law § 400.00(14).  See Int'l Women's Day, 619 F.3d at 369 (Government has significant interest in recouping expenses incurred from processions on public streets); Srail v. Vill. of Lisle, Ill., 588 F.3d 940,

35

946-48 (7th Cir. 2009) (concerns about recouping significant expenses constitute sufficient rational basis to justify disparate treatment).  The New York State Legislature, in adopting the 1947 Amendment, could reasonably have concluded that the exemption was a means of providing New York City with the flexibility to set licensing fees at a rate that would more closely approximate the specific costs incurred by the City. The plaintiffs argue that this was not the actual objective of the 1947 Amendment, pointing to comments by the sponsor of the legislation that the law had the beneficial effects of discouraging some applicants from seeking a handgun license and allowing for "revenue raising taxes." (Goldberg-Cahn Decl. Ex. A at 7-8.)  However, the proper inquiry on rational basis review "is whether there is any conceivable rational basis justifying [the] distinction" and "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 309, 315 (1993); see also United States v. O'Brien, 391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.").  Moreover, the sponsor of the 1947 Amendment also indicated that the law was designed to "give discretion" to the City Council and "provid[e]

36

the flexibility required to keep costs and receipts balanced."
(Goldberg-Cahn Decl. Ex. A at 7.)  Thus, the objective of
permitting New York City to recover the costs associated with
its handgun licensing scheme constitutes a rational basis for
the classification drawn by Penal Law § 400.00(14).

However, the plaintiffs argue that, because all
jurisdictions incur costs through licensing that are far higher
than the $3-$10 fee range applicable elsewhere in New York
State, the objective of cost recovery cannot justify the
disparate treatment of New York City in Penal Law § 400.00(14).
However, there is no evidence that other jurisdictions sought
and were denied an exemption from the $10 maximum fee at the
time Penal Law § 400.00(14) was amended or at any time
thereafter.  The only jurisdiction to have sought such an
exemption is Nassau County, seemingly also because of the fact
that fees were inadequate to defray administrative costs, and
this exemption was also granted.  See 1973 N.Y. Laws Ch. 546;
Connell Decl. Ex. G at 2-4.  The fact that other jurisdictions
did not also seek the exemption granted to New York City and
Nassau County does not demonstrate that the classification drawn
by Penal Law § 400.00(14) is discriminatory or without rational
basis.  While the New York State Legislature could have chosen
to raise fees uniformly across the State, it chose instead to
allow the two jurisdictions who made showings of administrative

costs to charge higher fees to offset partially those costs.
That was a reasonable means of achieving the legitimate
objective of cost recovery.  Thus, Penal Law § 400.00(14)
withstands rational basis scrutiny and does not violate the
Equal Protection Clause.  Accordingly, the Intervenor's and City
Defendants' motions for summary judgment are **granted** and the
plaintiffs' second cause of action under the Equal Protection
Clause is **dismissed**.  The plaintiffs' motion for summary
judgment with respect to this claim is **denied**.

## CONCLUSION

The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, the
remaining arguments are either moot or without merit.  For the
reasons explained above, the plaintiffs' motion for summary
judgment is **denied**.  The cross motions for summary judgment by
the City Defendants and the Intervenor are **granted.**  The Clerk
is directed to enter Judgment dismissing the Complaint.  The
Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          March 26, 2012

                                    John G. Koeltl
                              United States District Judge

38