12-1578-cv
*Kwong, et al. v. Bloomberg, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: February 1, 2013                                                         Decided: July 9, 2013)

Docket No. 12-1578-cv

_____

SHUI W. KWONG, GEORGE GRECO, GLENN HERMAN, NICK LIDAKIS, TIMOTHY S. FUREY, DANIELA GRECO, NUNZIO CALCE, SECOND AMENDMENT FOUNDATION, INC., NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC.,

*Plaintiffs-Appellants*,

v.

MICHAEL BLOOMBERG, in his official capacity as Mayor of the City of New York, CITY OF NEW YORK,

*Defendants-Appellees*,

ATTORNEY GENERAL OF THE STATE OF NEW YORK,

*Intervenor-Appellee*,

ERIC T. SCHNEIDERMAN, in his official capacity as Attorney General of the State of New York,

*Defendant.*

_____

Before: WALKER, CABRANES, and WESLEY, *Circuit Judges*.

New York State Penal Law § 400.00(14) permits New York City (and Nassau County) to set and collect a residential handgun licensing fee that exceeds the allowable fee collected in other parts of New York State.  Currently, the cost to obtain a residential handgun license in New York City is

$340 for a license which lasts for three years.  N.Y.C. Admin. Code § 10-131(a)(2); 38 RCNY § 5-28 (requiring renewal of handgun licenses every three years).  In this appeal, which follows a grant of summary judgment dismissing the complaint in the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*), we are asked to determine: (1) whether New York City Administrative Code § 10-131(a)(2), which sets the current residential handgun licensing fee in New York City at $340, violates the Second Amendment; and (2) whether New York State Penal Law § 400.00(14), which allows New York City (and Nassau County) to set and collect a residential handgun licensing fee outside the $3-10 range permitted in other jurisdictions in New York State, violates the Equal Protection Clause.  We hold that both statutes survive constitutional scrutiny, and therefore affirm the judgment of the District Court.

        Judge Walker concurs in the judgment of the Court in a separate opinion.

> DAVID D. JENSEN, David Jensen PLLC, New York, NY, *for Plaintiffs-Appellants*.
>
> SUSAN PAULSON (Francis F. Caputo, Michelle Goldberg-Cahn, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.
>
> SIMON HELLER (Barbara D. Underwood, Richard Dearing, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for Intervenor-Appellee*.

JOSÉ A. CABRANES, *Circuit Judge*:

        New York State Penal Law § 400.00(14) permits New York City (and Nassau County) to set and collect a residential handgun licensing fee that exceeds the maximum fee allowable under state law in other parts of New York State.  Currently, the cost to obtain a residential handgun license in New York City is $340 for a license which lasts for three years.  N.Y.C. Admin. Code § 10-131(a)(2); 38 RCNY § 5-28 (requiring renewal of handgun licenses every three years).  In this appeal, which follows a grant of summary judgment dismissing the complaint in the United States District Court

for the Southern District of New York (John G. Koeltl, *Judge*), we are asked to determine: (1) whether New York City Administrative Code § 10-131(a)(2), which sets the current residential handgun licensing fee in New York City at $340, violates the Second Amendment;[1] and (2) whether New York State Penal Law § 400.00(14), which allows New York City and Nassau County to set and collect a residential handgun licensing fee outside the $3-10 range permitted in other jurisdictions in New York State, violates the Fourteenth Amendment's Equal Protection Clause.[2]

We hold that both statutes survive constitutional scrutiny, and therefore affirm the March 26, 2012 Opinion and Order of the District Court, which granted summary judgment in favor of the defendants and dismissed the complaint.

## BACKGROUND

Plaintiffs are individuals who have been issued residential handgun licenses[3] in New York City, and two organizations, the Second Amendment Foundation and the New York State Rifle & Pistol Association (jointly, "plaintiffs").[4] They bring this action pursuant to 42 U.S.C. § 1983, asserting that: (1) New York City Administrative Code § 10-131(a)(2) ("Admin. Code § 10-

---

[1] The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

[2] The Fourteenth Amendment provides, in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

[3] In particular, this case involves residential "Premises License[s]," 38 RCNY § 5-23, which allow a license holder to "have and possess [a handgun] in his dwelling." N.Y. Penal Law § 400.00(2)(a). For ease of expression, we refer to these so-called "premises-residence handgun licenses," *see, e.g.*, *Rombom v. Kelly*, 901 N.Y.S.2d 29, 30 (1st Dep't 2010), as "residential handgun licenses."

[4] Before the District Court, but not on appeal, the New York Attorney General argued that plaintiffs lacked standing to bring this § 1983 action. The District Court held that the individual plaintiffs who paid $340 and obtained a residential handgun license had standing to bring this action. *Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 251-52 (S.D.N.Y. 2012). We agree. Because we are persuaded that the individual plaintiffs have standing, we need not address the standing arguments, left unresolved by the District Court, regarding the two organizational plaintiffs. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263-64 (1977) (declining to address whether an organization had standing after concluding that at least one individual plaintiff had standing); *see generally Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 156-59 (2d Cir. 2012) (discussing associational standing).

131(a)(2)") violates the Second Amendment by requiring New York City residents to pay $340[5] to obtain a residential handgun license;[6] and (2) New York Penal Law § 400.00(14) ("Penal Law § 400.00(14)") violates the Equal Protection Clause of the Fourteenth Amendment by allowing New York City and Nassau County to charge a higher handgun licensing fee than other jurisdictions in New York State.

### A. Factual Background

In New York State, it is illegal to possess a handgun without a valid license, even if the handgun remains in one's residence. *See* N.Y. Penal Law §§ 265.01(1), 265.20(a)(3). In New York City, the New York City Police Department License Division ("License Division") is responsible for processing and issuing residential handgun licenses, as well as verifying that each applicant is eligible to receive such a license. *See id.* § 400.00(1), (4); 38 RCNY §§ 5-01(a), 5-02.

Penal Law § 400.00(14)—one of the statutes challenged by plaintiffs—sets the range of permissible fees that may be charged by localities for firearm licenses in New York State. Although that statute sets the general range of fees at between $3 and $10, it allows the New York City Council and the Nassau County Board of Supervisors to set licensing fees outside of this range. *See* N.Y. Penal Law § 400.00(14). In relevant part, it provides:

> In [New York City], the city council and in the county of Nassau the Board of Supervisors shall fix the fee to be charged for a license to carry or possess a pistol or revolver and provide for the disposition of such fees. Elsewhere in the state, the licensing officer shall collect and pay into the county treasury the following fees: for each license to carry or possess a pistol or revolver, not less than three dollars nor more than ten dollars as may be determined by the legislative body of the county . . . .

---

[5]  In addition to the $340 licensing fee, the record indicates that applicants are required to pay an additional $94.25 fee for fingerprinting and background checks conducted by the New York State Division of Criminal Justice Services. This fee is paid only for initial applications, not for renewals, and is not contested on appeal.

[6]  Although the License Division issues licenses for many different types of firearms, the questions presented in this appeal concern only the fee associated with obtaining a residential handgun license.

*Id.* Pursuant to Admin. Code § 10-131(a)(2)—the other statute challenged by plaintiffs—New York City currently charges residents $340 for a residential handgun license, which lasts for three years.[7]

The New York City Council has been authorized by state law to set its own licensing fee since 1947, independent of the licensing fee range allowed in other parts of the State. In 1948, the New York City Council set the fee at $10 for an initial handgun license; the maximum fee allowed in other parts of New York State at that time was $1.50. Between 1962 and 2004, the licensing fee in New York City was increased six times. In 2004, Local Law 37 amended Admin. Code § 10-131(a)(2) to change the residential handgun license from a two-year permit with a fee of $170 to the current three-year permit with a fee of $340.[8] In practical terms, the amendment to § 10-131(a)(2) increased the cost for residential license holders of owning a handgun by $28.33 per year.

The amendment to § 10-131(a)(2) also permitted New York City substantially to recoup the cost of processing license applications. In that regard, the New York City Office of Management and Budget ("OMB") prepared a "User Cost Analysis" to accompany the introduction of Local Law 37, and this report showed that in Fiscal Year 2003 the average administrative cost for each handgun license application processed by the License Division was $343.49. *See* Joint App'x 370. The Committee on Finance of the New York City Council submitted a separate report detailing the costs and revenue associated with New York City's handgun licensing scheme. It stated that, although the costs associated with operating the licensing scheme exceeded $6 million per year, the fees collected only amounted to $3.35 million. *See id.* at 230. The report also estimated that the increased licensing

---

[7]   Nassau County currently charges residents $200 for a five-year residential handgun license.

[8]   Admin. Code § 10-131(a)(2) now provides:

> Every license to carry or possess a pistol or revolver in the city may be issued for a term of no less than one or more than three years. Every applicant for a license to carry or possess a pistol or revolver in the city shall pay therefor, a fee of three hundred forty dollars for each original or renewal application for a three year license period or part thereof, a fee of ten dollars for each replacement application of a lost license.

5

fees (from $170 per two-year license to $340 per three-year license) would result in an additional $1.1 million in revenue, *id.* at 231, and concluded that the pre-2004 licensing fee "d[id] not reflect the actual costs of licensing," *id.* at 234.

In 2010, the cost of New York City's licensing scheme again was studied by the New York Police Department ("NYPD") in conjunction with the OMB. This most recent study concluded each initial residential handgun application cost the License Division $977.16 to process and that each renewal application cost $346.92. *Id.* at 337, 384, 389.

## B. Procedural History

Plaintiffs filed this action on April 5, 2011, against, *inter alia*, Michael Bloomberg (in his capacity as Mayor of New York City) and the City of New York (jointly, "the City"). By a stipulation dated May 19, 2011, the New York Attorney General ("NYAG") intervened to defend Penal Law § 400.00(14)'s constitutionality.

On June 23, 2011, plaintiffs moved for summary judgment prior to the completion of any discovery. The City and the NYAG cross-moved for summary judgment on July 28, 2011.[9] On March 26, 2012, the District Court denied plaintiffs' motion for summary judgment and granted the cross-motions for summary judgment filed by the City and the NYAG. Judgment was entered on March 27, 2012.

With regard to Admin. Code § 10-131(a)(2), the District Court held that the $340 fee did not impermissibly burden plaintiffs' Second Amendment rights under the Supreme Court's "fee jurisprudence" because it was designed to defray, and did not exceed, the administrative costs of regulating an individual's right to bear arms. *See Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 253-58 (S.D.N.Y. 2012). In particular, the District Court noted that "[t]he plaintiffs offer no evidence

---

[9] The NYAG moved for summary judgment with regard to the part of the action directed at Penal Law § 400.00(14) only.

6

disputing or rebutting the City Defendants' evidence that the application fees imposed by Admin. Code § 10-131(a)(2) do not exceed the administrative costs attendant to the licensing scheme." *Id.* at 257. The District Court also held that $340 fee was "permissible if analyzed under the means-end scrutiny applicable to laws that burden the exercise of Second Amendment rights." *Id.* at 258. After determining that "intermediate scrutiny" was appropriate because "Admin. Code § 10-131(a)(2) does not effect a ban on handguns but only imposes a fee, [and therefore] the burden on the Second Amendment right is not severe," *id.* at 259, the District Court upheld the fee, finding that it "is substantially related to the[ ] important governmental interests [of promoting public safety and preventing gun violence] because the fee is designed to recover the costs attendant to the licensing scheme," *id.*

With regard to Penal Law § 400.00(14), the District Court rejected plaintiffs' Equal Protection challenge under so-called "rational basis" review. It held that rational basis review was appropriate inasmuch as this state statute (1) did not involve any suspect classification, and (2) did not burden plaintiffs' Second Amendment rights because it *permitted*, rather than *required*, New York City to set a licensing fee higher than most jurisdictions in New York State. *Id.* at 260. The District Court also noted that "[e]ven if Penal Law § 400.00(14) could be viewed as disparately burdening the Second Amendment right by imposing a higher fee on New York City residents, the law would still pass constitutional muster." *Id.* at 261 n.13. Specifically, it stated that "[s]everal courts have declined to apply strict scrutiny [in similar circumstances because they] . . . have concluded that the Second Amendment analysis is sufficient to protect these rights[,] and [these courts] have either declined to conduct a separate equal protection analysis or have subjected the equal protection challenge to rational basis review." *Id.* (citing, *inter alia*, *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011), *aff'd in relevant part*, 681 F.3d 1041 (9th Cir. 2012) (en banc)).

This appeal followed.

7

**DISCUSSION**

"We review an order granting summary judgment *de novo,* drawing all factual inferences in favor of the non-moving party." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 30 (2d Cir. 2012). Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012).

### A. Admin. Code § 10-131(a)(2) Is Constitutional

The first issue to which we turn is whether the $340 handgun licensing fee imposed by Admin. Code § 10-131(a)(2) violates the Second Amendment, *see* note 1, *ante*, which is "fully applicable to the States" through the Fourteenth Amendment, *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010). The Supreme Court has held that the Second Amendment "confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). It also has recognized, however, that the Second Amendment right to keep and bear arms "[i]s not unlimited, just as the First Amendment's right of free speech [i]s not." *Id.* (citation omitted).

Plaintiffs' central argument against Admin. Code § 10-131(a)(2) is that it cannot survive constitutional scrutiny because the $340 licensing fee places too great a burden on their Second Amendment rights. We disagree.

### i. The $340 Fee Is Permissible Under the Supreme Court's "Fee Jurisprudence"

We first consider whether the licensing fee of Admin. Code § 10-131(a)(2) is a permissible licensing fee. The Supreme Court's "fee jurisprudence" has historically addressed the constitutionality of fees charged by governmental entities on expressive activities protected by the First Amendment—such as fees charged to hold a rally or parade. Two district court decisions that have considered the issue in the wake of *Heller* and *McDonald* have used the same analytical framework to consider similar claims involving the exercise of Second Amendment rights. *See Justice*

*v. Town of Cicero*, 827 F. Supp. 2d 835, 842 (N.D. Ill. 2011); *Heller v. District of Columbia*, 698 F. Supp. 2d 179, 190-92 (D.D.C. 2010), *aff'd in part, rev'd in part on other grounds*, 670 F.3d 1244 (D.C. Cir. 2011). In both of these cases, the courts have upheld the contested licensing or registration fees. We agree that the Supreme Court's First Amendment fee jurisprudence provides the appropriate foundation for addressing plaintiffs' fee claims under the Second Amendment. *See McDonald*, 130 S. Ct. at 3056 (Scalia, J., concurring) (noting similarities between the scope of the First Amendment and the Second Amendment); *Heller*, 554 U.S. at 595 (same); *cf. United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012) ("In deciding whether a law substantially burdens Second Amendment rights, it is therefore appropriate to consult principles from other areas of constitutional law, including the First Amendment (to which *Heller* adverted repeatedly).").

In the First Amendment context, the Supreme Court has held that governmental entities may impose licensing fees relating to the exercise of constitutional rights when the fees are designed "to meet the expense incident to the administration of the [licensing statute] and to the maintenance of public order in the matter licensed." *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941) (quotation marks omitted). Put another way, imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity. *E. Conn. Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) ("Licensing fees used to defray administrative expenses are permissible, but only to the extent necessary for that purpose."); *see Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 370 (5th Cir. 2010); *Nat'l Awareness Found. v. Abrams*, 50 F.3d 1159, 1165 (2d Cir. 1995) ("Thus, fees that serve not as revenue taxes, but rather as means to meet the expenses incident to the administration of a regulation and to the maintenance of public order in the matter regulated are

9

constitutionally permissible.");[10] *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 259-61 (2d Cir. 2013) (upholding a toll bridge fee as "constitutional[ly] permissib[le]" in the "right to travel" context); *cf. Murdock v. Pennsylvania*, 319 U.S. 105, 113-14 (1943) (striking down a license tax that was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question").[11]

The undisputed evidence presented to the District Court demonstrates that the $340 licensing fee is designed to defray (and does not exceed) the administrative costs associated with the licensing scheme. Indeed, the only relevant evidence presented to the District Court consisted of: (1) a report by the Committee of Finance of the New York City Council, stating that the revenue generated by the licensing fees in 2004—before the fee increase—covered just over half of the related expenses and "d[id] not reflect the actual costs of licensing," Joint App'x 230; and (2) a report by the OMB in 2003, noting that the cost per licensing application was $343.49 in 2003 and recommending that the licensing fee be increased to $340 for a three-year license "to recover costs," *id.* at 370. A 2010 User Cost Analysis performed by the OMB also showed that the licensing fee did not exceed the administrative costs of the scheme and only generated roughly 35% of the per-unit costs incurred by the City of New York to process initial residential handgun licenses. *Id.* at 333, 384.

Although plaintiffs are quick to argue that New York City's residential handgun licensing fee is significantly higher than the fee charged in other jurisdictions, this is simply not the test for

---

[10]     We also observed in *National Awareness Foundation* that a fee is not unconstitutional "simply because the revenues derived therefrom are not limited solely to the costs of administrative activities, such as processing and issuing fees." 50 F.3d at 1166. A licensing fee might also be permissible, for example, when it defrays the cost of enforcing the licensing scheme, and the propriety of such a fee must be evaluated on a case-by-case basis. *Id.*

[11]     Plaintiffs argue briefly, in reliance on *Murdock*, that the $340 licensing fee cannot withstand scrutiny because it is not "a nominal fee." This argument, however, specifically has been rejected by the Supreme Court. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 137 (1992) ("This sentence [in *Murdock*] does not mean that an invalid fee can be saved if it is nominal, or that only nominal charges are constitutionally permissible."); *see also Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1248-49 (10th Cir. 2000); *N.E. Ohio Coal. for Homeless v. City of Cleveland*, 105 F.3d 1107, 1110 (6th Cir. 1997). Accordingly, we reject plaintiffs' argument that a fee must be "nominal" for it to be permissible under the Supreme Court's "fee jurisprudence."

assessing the validity of a licensing fee. Even assuming that an otherwise proper fee might be impermissible if it were so high as to be exclusionary or prohibitive, plaintiffs provide nothing beyond unsubstantiated assertions to suggest that the $340 fee for a three-year license reaches this level. Moreover, the facts of this case demonstrate that the $340 fee was not prohibitive or exclusionary as applied to these individual plaintiffs because they all were able to obtain the residential handgun licenses that they sought.[12] In light of these principles and the evidence presented in the record, we hold that the District Court correctly concluded that Admin. Code § 10-131(a)(2) imposes a constitutionally permissible "fee."

### ii. The $340 Fee Is Not an Unconstitutional Burden

We next consider whether Admin. Code § 10-131(a)(2)'s $340 fee imposes an unconstitutional burden on the exercise of plaintiffs' Second Amendment rights. In *United States v. Decastro*, we held that the appropriate level of scrutiny under which a court reviews a statute or regulation in the Second Amendment context is determined by how substantially that statute or regulation burdens the exercise of one's Second Amendment rights. 682 F.3d at 164. We further explained that where the burden imposed by a regulation on firearms is a "marginal, incremental *or even appreciable restraint* on the right to keep and bear arms," it will not be subject to heightened scrutiny. *Id.* at 166 (emphasis supplied). "Rather, heightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) *operate as a substantial burden* on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." *Id.* (emphasis supplied); *see also Nordyke*, 644 F.3d at 786 ("[O]nly

---

[12] This challenge does not present us with the hypothetical situation where a plaintiff was unable to obtain a residential handgun license on account of an inability to pay the $340 fee. *See United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 1674 (2011) ("A person to whom a statute properly applies can't obtain relief based on arguments that a differently situated person might present.").

11

regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny under the Second Amendment.").[13]

On the facts of this case, we find it difficult to say that the licensing fee, which amounts to just over $100 per year, is anything more than a "marginal, incremental or even appreciable restraint" on one's Second Amendment rights—especially considering that plaintiffs have put forth *no evidence* to support their position that the fee is prohibitively expensive.[14]  *See Decastro*, 682 F.3d at 166 (holding that heightened scrutiny is not appropriate where the regulation does not impose a "substantial burden on the ability of [plaintiffs] to possess and use a firearm for self-defense"); *see also Kwong*, 876 F. Supp. 2d at 259 (noting that because "Admin. Code § 10-131(a)(2) does not effect a ban on handguns but only imposes a fee, the burden on the Second Amendment right is not severe").  Indeed, the fact that the licensing regime makes the exercise of one's Second Amendment rights more expensive does not necessarily mean that it "substantially burdens" that right.  *See Nordyke*, 644 F.3d at 787-88 ("Similarly, a law does not substantially burden a constitutional right simply because it makes the right more expensive or more difficult to exercise."); *see also Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 874 (1992) ("The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to [exercise the right] cannot be enough to invalidate it."); *cf. Heller*, 554

---

[13]  Other circuits have applied similar analytical frameworks to review provisions that regulate Second Amendment rights.  *See, e.g.*, *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) (applying a sliding scale approach to determine the level of scrutiny applicable to laws that burden Second Amendment rights); *Heller v. District of Columbia*, 670 F.3d 1244, 1261-62 (D.C. Cir. 2011); *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 96-97 (3d Cir. 2010).  Because the District Court's opinion in the instant case was issued before *Decastro* was decided, it relied on some of these cases from our sister Circuits to determine the appropriate framework under which to analyze plaintiffs' constitutional challenge to Admin. Code § 10-131(a)(2).

[14]  As noted above, each individual plaintiff was able to, and did, obtain a residential handgun license.

U.S. at 626-27 ("[N]othing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms.").

But we need not definitively decide that applying heightened scrutiny is unwarranted here[15] because we agree with the District Court that Admin. Code § 10-131(a)(2) would, in any event, survive under the so-called "intermediate" form of heightened scrutiny.[16] Under this test, a regulation that burdens a plaintiff's Second Amendment rights "passes constitutional muster if it is substantially related to the achievement of an important governmental interest." *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012).

We recently observed that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." *Id.* at 97. Because the record demonstrates that the licensing fee is designed to allow the City of New York to recover the costs incurred through operating its licensing scheme, which is designed to promote public safety and prevent gun violence, we agree with the District Court that Admin. Code § 10-131(a)(2) easily survives "intermediate

---

[15] In his concurring opinion, Judge Walker asserts that Admin. Code § 10-131(a)(2) must be subject to "intermediate scrutiny" because "[a]ny non-nominal licensing fee necessarily constitutes a substantial burden" on one's Second Amendment rights. Concurrence, at 4, *post*. Beyond the lack of legal authority to support this proposition, *see id.*, we find such an assertion particularly problematic on the facts of this case because plaintiffs have put forward *no evidence* to suggest that Admin. Code § 10-131(a)(2) operates as a "substantial burden." Although we are mindful that a hypothetical licensing fee *could be* so high as to constitute a "substantial burden" and that any licensing fee *could* "substantially burden" a hypothetical plaintiff's Second Amendment rights, we are not confronted with a hypothetical fee or a hypothetical plaintiff. Accordingly, we need not—and do not—decide whether heightened scrutiny is appropriate here because we conclude that Admin. Code § 10-131(a)(2) survives "intermediate scrutiny."

Moreover, it is unclear to us where the dividing line between a "nominal" fee and a "non-nominal" fee is located. Judge Walker's concurring opinion provides no answer, and instead of attempting to draw a line between "nominal" and "non-nominal" fees, we think it a far better approach to require plaintiffs to put forth *at least some* evidence to suggest that a fee operates as a "substantial burden." In any event, we emphasize that this disagreement with Judge Walker amounts to an academic exercise inasmuch as we do not decide whether heightened scrutiny is warranted in the circumstances here presented.

[16] Because Admin. Code § 10-131(a)(2) does not ban the right to keep and bear arms but only imposes a burden on the right, we agree with the District Court that strict scrutiny is not appropriate here. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 93-97 (2d Cir. 2012) (applying intermediate scrutiny to a statute that required "proper cause" for the issuance of a concealed carry pistol license because the statute did "not burden the 'core' protection of self-defense"); *Masciandaro*, 638 F.3d at 469-71 (applying intermediate scrutiny to a regulation that prohibited the possession of a loaded handgun in a vehicle in a national park); *Marzzarella*, 614 F.3d at 97 (same, where the regulation limited the possession of firearms with obliterated serial numbers).

scrutiny." *Kwong*, 876 F. Supp. 2d at 259 (finding that Admin. Code § 10-131(a)(2) "is substantially related to the[ ] important governmental interests [of promoting public safety and preventing gun violence] because the fee is designed to recover the costs attendant to the licensing scheme"); *see Bach v. Pataki*, 408 F.3d 75, 91 (2d Cir. 2005), *overruled on other grounds by McDonald*, 130 S. Ct. at 3026 (noting that the State "has a substantial and legitimate interest . . . in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument" (quotation marks omitted)); *see also Nat'l Awareness Found.*, 50 F.3d at 1167 ("In sum, we conclude that the $80 fee . . . serves the legitimate purpose of defraying the expenses incident to the administration and enforcement of § 173-b(1)."); *cf. Ctr. for Auto Safety, Inc. v. Athey*, 37 F.3d 139, 145 (4th Cir. 1994) (holding that fees on certain types of solicitation were "narrowly tailored to further a legitimate governmental purpose" where the fees were "calibrated to approximate the costs of administering the Statute, and the revenues raised by the fees d[id] not exceed these costs").

For these reasons, we affirm the March 26, 2012 Opinion and Order of the District Court insofar as it concludes that Admin. Code § 10-131(a)(2)'s $340 licensing fee is constitutional.

### B. Penal Law § 400.00(14) Is Constitutional

The second issue presented in this appeal is whether Penal Law § 400.00(14), which allows the City of New York (and Nassau County) to set the residential handgun licensing fee outside the $3-10 range permitted in the rest of New York State, violates the Equal Protection Clause. In short, plaintiffs argue that this statutory provision should be reviewed under "strict scrutiny," and should be found to be unconstitutional "to the extent it authorizes the City to impose a fee greater than $10," because it burdens the exercise of a fundamental right. Appellants' Br. 25. We disagree with plaintiffs' views about the appropriate level of "scrutiny" as well as the constitutionality of the Penal Law § 400.00(14).

### i. Penal Law § 400.00(14) Is Subject to Rational Basis Review

Although the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike," *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985), it "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purposes for which the classification is made," *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966).

Here, Penal Law § 400.00(14) simply allows the New York City Council to "fix the fee to be charged for a license to carry or possess a pistol or revolver [in New York City]," while the licensing fee to carry or possess such a firearm outside New York City must be "not less than three dollars nor more than ten dollars as may be determined by the legislative body of the county." N.Y. Penal Law § 400.00(14).[17] But for the purposes of plaintiffs' Equal Protection challenge, it is perhaps more important to summarize what Penal Law § 400.00(14) does not do. It does not require the New York City Council to charge a higher (or lower) fee than other jurisdictions in the State. It does not restrict other jurisdictions from obtaining a legislative exemption from the $3-10 fee range like New York City and Nassau County.[18] And it does not allow a local government to charge any fee amount; all license or permit fees in New York cannot exceed "a sum reasonably necessary to cover the costs of the issuance, inspection and enforcement." *See ATM One L.L.C. v. Inc. Vill. of Freeport*, 714 N.Y.S.2d 721, 722 (2d Dep't 2000) (quotation marks omitted). In other words, beyond setting the $3-10 fee range applicable to most of New York State—which plaintiffs do not contest—Penal Law § 400.00(14) itself does *nothing* to burden anyone's Second Amendment rights.

---

[17]    As noted above, Nassau County also is exempted by this provision from the $3-10 licensing fee range.

[18]    Moreover, there is no evidence that another local government (other than the City of New York and Nassau County) has sought to set its licensing fee outside of the $3-10 range, as New York City did. Nor is there any evidence that any such a request was rejected by the New York legislature.

In light of what Penal Law § 400.00(14) does (and does not do), we agree with the District Court that rational basis review is appropriate because Penal Law § 400.00(14)'s geographic classification is not suspect, *see City of Cleburne*, 473 U.S. at 440, and the statute itself does not burden a fundamental right, *see Romer v. Evans*, 517 U.S. 620, 631 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class," the legislative classification will be upheld "so long as it bears a rational relation to some legitimate end.").[19]

### ii. Penal Law § 400.00(14) Survives "Rational Basis" Review

Penal Law § 400.00(14) survives rational basis review,[20] which requires only that there be "a rational relationship between the disparity of treatment and some legitimate governmental purpose,"

---

[19]    To the extent that plaintiffs argue that the fee scheme burdens a fundamental right, it can only be so if it results in New York City (or Nassau County) adopting a fee that itself impermissibly burdens the Second Amendment right. But, as noted above, the $340 licensing fee required by Admin. Code § 10-131(a)(2) survives "intermediate scrutiny," *see* Discussion Section A.ii, *ante*, and Penal Law § 400.00(14) does not involve a suspect classification. In such circumstances, courts have applied "rational basis" review to Equal Protection claims on the theory that the Second Amendment analysis sufficiently protects one's rights. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 211-12 (5th Cir. 2012); *Hightower v. City of Boston*, 693 F.3d 61, 83 (1st Cir. 2012) ("Given that the Second Amendment challenge fails, the equal protection claim is subject to rational basis review."); *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) (en banc) ("As to the Nordykes' equal protection claim, because the ordinance does not classify shows or events on the basis of a suspect class, and because we hold that the ordinance does not violate either the First or Second Amendments, rational basis scrutiny applies."). And while we are mindful that plaintiffs' Equal Protection claim and Second Amendment claim technically challenge different statutes, this fact strikes us as being a distinction without a difference. Because plaintiffs have not shown that New York City officials have set, or are likely to set, a fee that impermissibly burdens the Second Amendment right, there is no indication that the variance in the levels of protection afforded by Penal Law § 400.00(14) in itself burdens a fundamental right.

In his concurring opinion, Judge Walker suggests that our analysis on this point "blinks reality" and "condones a loophole." Concurrence, at 6, *post*. We respectfully disagree. Like *every* Circuit to have addressed this issue, we simply conclude that plaintiffs should not be allowed to use the Equal Protection Clause "to obtain review under a more stringent standard" than the standard applicable to their Second Amendment claim. *See Woollard v. Gallagher*, 712 F.3d 865, 873 n.4 (4th Cir. 2013) ("[T]o accept [the Appellees' equal protection] theory would be to erase, in one broad stroke, the careful and sensible distinctions that the Fourth Circuit and other courts have drawn between core and non-core Second Amendment protections and to ignore the principle that differing levels of scrutiny are appropriate to each." (internal quotation marks omitted)). Put another way, an Equal Protection claim that is based on the alleged burdening of one's Second Amendment rights should not be reviewed in isolation; whether one's Second Amendment rights are impermissibly "burdened" is necessarily informed by the underlying Second Amendment analysis. As New York City's $340 licensing fee survives "intermediate scrutiny," the fact that other localities charge a *lower* fee need not be subject to anything more than "rational basis" review.

[20]    Although we conclude that Penal Law § 400.00(14) survives rational basis review, we make no comment on the wisdom of this particular scheme, which limits all but two localities to a small fee range. Of course, such considerations are for the legislature to determine. *See Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 487 (1955) ("The Oklahoma law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the

for many of the reasons mentioned above regarding Admin. Code § 10-131(a)(2).  *See Heller v. Doe*, 509 U.S. 312, 320 (1993).

Plaintiffs do not dispute that the State has a legitimate interest in allowing New York City to recoup the costs incurred by its regulatory schemes more fully.  *See* Appellant's Br. 38-39; *see also Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002) (approving a municipality's use of permits that were designed, at least in part, "to assure financial accountability for damage caused by [an] event"); *Int'l Women's Day March Planning Comm.*, 619 F.3d at 369 ("It is undisputed that San Antonio has a significant interest in recouping the expenses it incurs from the processions held on its streets."); *Nat'l Awareness Found.*, 50 F.3d at 1167 (concluding that that an $80 fee "serve[d] the legitimate purpose of defraying the expenses incident to the administration and enforcement" of a statutory scheme regarding professional solicitors).  Moreover, by providing flexibility to the City of New York to defray the costs of operating this licensing scheme, the State—through Penal Law § 400.00(14)—helps ensure that New York City's licensing scheme is adequately funded, thereby allowing it to function properly.  *See Cox*, 312 U.S. at 577 ("The suggestion that a flat fee should have been charged fails to take account of the difficulty of framing a fair schedule to meet all circumstances, and we perceive no constitutional ground for denying to local governments that flexibility of adjustment of fees which in the light of varying conditions would tend to conserve rather than impair the liberty sought."); *cf. Avery v. Midland Cnty.*, 390 U.S. 474, 485 (1968) ("The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems.").  Indeed, as "[e]very application [under N.Y. Penal Law § 400.00(1)-(4)] triggers a local investigation by police into the applicant's mental health history, criminal history, [and] moral character," *Kachalsky*, 701

---

advantages and disadvantages of the new requirement."); *cf. Hearne v. Bd. of Educ. of Chi.*, 185 F.3d 770, 774-75 (7th Cir. 1999) (upholding a statute under rational basis review that treated Chicago differently than the rest of Illinois with regard to certain employment rights for school teachers).

F.3d at 87, helping ensure that the scheme functions properly promotes public safety, *see Bach*, 408 F.3d at 91 (noting that the State "has a substantial and legitimate interest . . . in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument" (quotation marks omitted)).

For these reasons, we conclude that Penal Law § 400.00(14), which permits New York City and Nassau County to charge a fee outside of the $3-10 range applicable in other jurisdictions in New York State, survives rational basis review and does not violate the Equal Protection Clause.

## CONCLUSION

To summarize, we hold that, on the facts presented in this appeal:

(1) Admin. Code § 10-131(a)(2), which sets the residential handgun licensing fee in New York City at $340 for a three-year license, is a constitutionally permissible licensing fee;

(2) Although we are skeptical that Admin. Code § 10-131(a)(2) should be subject to any form of heightened scrutiny, *see United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012), we need not definitively answer that question because we conclude that it survives "intermediate scrutiny" in any event;

(3) Penal Law § 400.00(14), which allows New York City (and Nassau County) to set and collect a residential handgun licensing fee outside the $3-10 range permitted in other jurisdictions in New York State, is subject only to "rational basis" review under the Equal Protection Clause because it "neither burdens a fundamental right nor targets a suspect class." *Romer v. Evans*, 517 U.S. 620, 631 (1996); and

(4) Penal Law § 400.00(14) survives "rational basis" review.

Accordingly, the March 27, 2012 judgment of the District Court is **AFFIRMED**.